**Donald Ray GOOCH, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 308–82.

Court of Criminal Appeals of Texas, En Banc.

Jan. 4, 1984.

Jerry R. Birdwell, Jack Simpson, Jr., Donald J. Maison, Jr., Dallas, for appellant.

Henry Wade, Dist. Atty., Jeffrey Keck, Jerry Muller and Joe Reves, Asst. Dist. Attys., Dallas, Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

ONION, Presiding Judge.

Appellant was convicted of theft of property of the value of over $200.00 and less than $10,000.00, as proscribed by V.T.C.A., Penal Code, § 31.03(d)(4)(A) (formerly receiving and concealing under former code). The court assessed punishment at three years' imprisonment following a jury verdict of guilty.

On appeal appellant's conviction was affirmed in an unpublished panel opinion by the Dallas Court of Appeals on rehearing. On original submission the panel had reversed the conviction for the failure of the trial court to instruct the jury two witnesses were accomplice witnesses as a matter of law. On rehearing the panel withdrew the earlier opinion and wrote inter alia,

"In his next four grounds, appellant contends that the court erred in not instructing the jury that witnesses Doug and Jimmy Roberts were accomplices as a matter of law or as a matter of fact. To ascertain if either witness was an accomplice, we must determine if either could be convicted of the same crime as appellant. *May v. State*, 618 S.W.2d 333 (Tex.Cr.App.1981). The appellant was convicted of theft of property that 'had been obtained by another whose name and identity is unknown to the Grand Jurors.' Obviously the Roberts brothers could not be convicted of that offense because the identity of the person who sold the meat products to them, viz., Donald Ray Gooch, was known to the

grand jurors. The Court did not err in refusing these instructions."

We granted appellant's petition to determine the correctness of the Court of Appeals' holding on the accomplice witness issue.

The indictment charged appellant with knowingly and intentionally exercising control over 54 cases of Frito-Lay Summer Sausage of the value of $56.10 per case for a total value of $3,032.64 and over 45 cases of Frito-Lay Smoked Beef Sticks of the value of $51.84 per case for a total value of $2,332.80, knowing the same was stolen, and it further alleged that said property had been obtained from the alleged owner by another whose name and identity was unknown to the grand jury.

The evidence shows the cases of meat products involved were stolen from the Frito-Lay Company by a person to the grand jury unknown. The property was found at the C & S Sales Company in Dallas on March 1, 1979.

C & S Sales was owned by Douglas Roberts, who employed his brother, Jimmy, and his sister, Barbara, to help him operate the company. C & S Sales was a salvage sales company. It purchased merchandise from warehouses, railroads, truck lines, truck drivers or other individuals who had anything to sell because it was damaged, overaged, or no longer wanted by the seller. The purchased products were sold for profit to wholesalers and other dealers.

C & S Sales paid various prices for the goods purchased, but usually the prices were below wholesale value. Frequently the price depended on the shelf life of the items. Coffee, for instance, would be purchased for sixty-five percent of the wholesale value; but many other items with a short shelf life would be purchased for twenty-five or thirty percent of the wholesale value.

Doug Roberts testified that he came in contact with Juanita Alford in the latter part of 1978. She worked at a warehouse, and was the appellant's ex-wife. He first heard appellant's name from her. In October, 1978, he received a telephone call from appellant, who inquired if Roberts wanted to buy some salvage Frito products. Roberts understood appellant worked for a truck line. Thereafter, there were five purchases from appellant by Roberts of Frito-Lay products. On the first two deliveries appellant gave Roberts invoices from Frito-Lay, but did not provide invoices on the other three transactions. The purchase prices were at a lower price than offered by regular Frito-Lay salesmen. The purchase prices on transactions with appellant varied from seven hundred to fifteen or sixteen hundred dollars.

On February 28, 1979, Doug Roberts related appellant called him and asked if he needed any Frito merchandise, and he stated he could use some meat or snack items. They generally agreed on $15.00 a case or roughly $1,500.00 for the delivery.

Jimmy Roberts, 22, testified he had worked for his brother at C & S Sales for five years and from time to time bought inventory and occasionally paid for deliveries. He met the appellant when he was selling and delivering goods to C & S Sales. At noon on March 1, 1979 Jimmy Roberts testified appellant delivered the 99 meat cases in question to C & S Sales. He did not suspect the property was stolen. Jimmy Roberts related appellant called later in the day inquiring when he could get his money for the delivery. He testified that in the past C & S Sales had purchased coffee and Bic lighters from appellant.

Doug Roberts testified when he arrived at C & S Sales late on March 1st he found the meat products had been delivered. On March 2nd when he arrived at the company, he found the police and Frito-Lay representatives there, and observed the meat products being removed.

The next day Doug Roberts called the appellant from a public telephone and told him the meat products had been confiscated by the police. Appellant called Doug Roberts shortly thereafter at the C & S Sales and told him that he had checked and "the stuff hadn't been picked up" and he wasn't going to be "beat" out of his mon-

ey; that he had $1,200.00 involved and demanded half of it be taken to Juanita Alford or that he would get Roberts "in trouble." Two days later Doug Roberts took $600.00 to Alford. Later that day at the police station he called appellant and their conversation was recorded.

Appellant timely requested that the jury be instructed Doug and Jimmy Roberts were accomplice witnesses as a matter of law. See Article 38.14, V.A.C.C.P. The special requested charges were refused.

Appellant first urges that a witness who receives stolen property knowing it to be stolen is an accomplice witness as a matter of law. He relies on V.T.C.A., Penal Code, § 31.03(c)(3) and (4), for the presumption that the Roberts brothers knew the property to be stolen because they failed to comply with requirements of the statute.

Sec. 31.03(c)(3) provides an actor engaged in the business of buying and selling used or second-hand personal property, etc., is presumed to know upon receipt by the actor of stolen property that the property has been previously stolen from another if the actor pays for or loans against the property $25.00 or more and the actor knowingly or recklessly fails to make certain records such as name, address and physical description of seller, etc., record a complete description of property, and fails to obtain a signed warranty from the seller, etc. It is the express intent of the statutory provision that the presumption arises unless the actor complies with each of the above requirements.

█ It is undisputed that the Roberts brothers failed to comply with the above mentioned requirements. However, there is no showing that they were engaged in the business of buying and selling used or second-hand personal property. The record shows they bought damaged or overaged goods, but nothing shows the goods were used or second-hand. The meat products involved could have hardly been used or second-hand. They were shown to be in their original packages. The statutory presumption did not apply to the Roberts brothers.

Disregarding the presumption, it is observed the Roberts brothers denied any knowledge that the meat products were stolen goods at the time they were received. Jimmy Roberts did not know of the purchase or purchase price of the meat products. He was merely present when the goods were delivered by appellant with whom the company had dealings with before without any showing that any of the previous items had been stolen.

Although the Roberts brothers denied knowledge of any theft, appellant argues the brothers knew he was not a Frito-Lay employee, had delivered other goods in rental trucks and had on occasion borrowed their truck to make the delivery, that he had told them he had obtained some of the items from "colored men," that Doug Roberts called appellant after the confiscation on a public telephone, and described himself as scared, worried and nervous about possible police action, that the police "were putting pressure" on him and he would have done anything "just to get out of there." The appellant also observes that Doug Roberts paid an "abnormally cheap" price for the 99 cases of meat products. The State counters in its brief that the expiration date on the meat product cases was two months prior to the date of the sale.

There was no direct evidence that Doug and Jimmy Roberts received stolen goods knowing they were stolen.[1]

The State argues that if the evidence can be interpreted as showing the Roberts brothers had knowledge the goods they received were stolen, this knowledge would at most, if then, render them "accessories," which under the current Penal Code would not make them accomplice witnesses.

Under the former Penal Code it was repeatedly held that an "accomplice witness"

---

1. It has been held that a witness is not deemed an accomplice witness because he knew of the crime but failed to disclose it or even concealed it. *Easter v. State,* 536 S.W.2d 223, 225 (Tex.Cr. App.1976); *Gausman v. State,* 478 S.W.2d 458 (Tex.Cr.App.1972).

under Article 38.14, V.A.C.C.P., is a person who either as a principal, accomplice (to the crime) or accessory (to the person)[2] was connected with the crime by unlawful act or omission on his part, transpiring either before, at the time of, or after the commission of the offense, whether he was present and participated in the crime. See *Easter v. State,* 536 S.W.2d 223, 226 (Tex.Cr.App.1976), and cases there cited. And it is well settled that one is not an accomplice witness who cannot be prosecuted for the offense with which the accused is charged. *Easter v. State,* supra, at p. 227, and cases there cited. See also *May v. State,* 618 S.W.2d 333, 340 (Tex.Cr.App.1981); *Russell v. State,* 598 S.W.2d 238, 249 (Tex.Cr.App. 1980). And this is true despite the witnesses' complicity in other crimes committed by the accused. *Easter v. State,* supra, at p. 225. *May v. State,* supra; *Kerns v. State,* 550 S.W.2d 91 (Tex.Cr.App.1977); *Singletary v. State,* 509 S.W.2d 572, 575 (Tex.Cr. App.1974).

The 1974 Penal Code made some notable changes with regard to parties to a crime. The distinction between a principal and an accomplice (to the crime) was abolished and an accessory (to the person) was eliminated as a party to a crime and replaced with V.T.C.A., Penal Code, § 38.05, defining the separate and distinct crime of "hindering apprehension or prosecution." See *Easter v. State,* supra, at p. 228; *Urtado v. State,* 605 S.W.2d 907 (Tex.Cr.App.1980).[3]

▪ Thus, it is clear that a person who would be guilty as an accessory (to the person) or an accessory after the fact under the former Penal Code cannot be prosecuted as such under the current Penal Code. Thus, even if it can be argued that the Roberts brothers were "accessories," they could not have been prosecuted for the same offense with which the appellant was charged and thus were not accomplice witnesses. *May v. State,* supra.

2. These terms were defined in the former Penal Code. See Articles 65, 70 and 77, V.A.P.C., 1925.

3. There are some cases decided under both the former Penal Code and the 1974 Code which hold that an accomplice witness is someone who has participated with another before, dur-

Appellant cites a number of cases which he contends hold that a witness who receives stolen property, knowing it to be stolen, is an accomplice witness as a matter of law. See, e.g., *Ysasaga v. State,* 444 S.W.2d 305 (Tex.Cr.App.1969); *Odom v. State,* 438 S.W.2d 912 (Tex.Cr.App.1969). As noted in *Ferguson v. State,* 573 S.W.2d 516, 523, 524 (Tex.Cr.App.1978), these cases were decided under the former Penal Code, and some like *Odom* and *Ysasaga* involved situations where appellant stated he knew the property was stolen or "figured" it was. We do not conclude that these cases control in the instant case.

Here the appellant was charged with theft by exercising control over personal property obtained or stolen by a person to the grand jury unknown. Under the circumstances presented, the Roberts brothers were not accomplice witnesses.

The judgment of the Court of Appeals is affirmed.

MILLER, J., not participating.

ing or after the commission of the crime. See *Carrillo v. State,* 591 S.W.2d 876 (Tex.Cr.App. 1979), and cases there cited. All of these cases decided under the 1974 Penal Code must be read in light of *Easter* and *Urtado.*