Peter John **HUSTING**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 04–89–00228–CR.

Court of Appeals of Texas,
San Antonio.

May 30, 1990.

Richard E. Langlois, San Antonio, for appellant.

Fred G. Rodriguez, Beth Taylor, Mike Ramos, Laura M. Hubert, Criminal Dist. Attys., San Antonio, for appellee.

Before BUTTS, PEEPLES and ONION, JJ.

## OPINION

ONION, Justice (Retired).[1]

A jury convicted the appellant of the murder of Francisco Lopez. The court assessed his punishment at confinement in the Department of Corrections for a term of ninety-nine (99) years.

Appellant advances two points of error. First, appellant challenges the sufficiency of the evidence to support his conviction. Secondly, appellant urges the trial court erred when it permitted the State to impeach a defense witness with a fourteen year old conviction for prostitution.

Delia Lopez, mother of the deceased, Frank Lopez, testified the deceased left her home at 2:30 p.m. on December 23, 1987, after borrowing her car. She expected him to return shortly. She next saw her car on the parking lot of K-Mart on Highway 90 on December 27, 1987. Her son's body was found in the trunk. The medical examiner testified that the cause of death was a single gunshot to the right forehead and that decomposition of the body was consistent with the deceased having been dead for four (4) days. He further related the alcohol level in the blood was approximately .32 grams per deciliter which meant the deceased was "very drunk" at the time of death.

Other witnesses testified to seeing the deceased in the afternoon or early evening of December 23, 1987.

Marie Navarro testified she met appellant, whom she knew as "Pedro," on December 18, 1987. A friend introduced them. She moved in with the appellant as she had lost her job and apartment. Appellant was the manager of the Altitude Apartments. Navarro revealed she was allowed to stay in appellant's apartment because she kept the books, collected the rent and did maintenance work. Navarro testified that about 5:00 or 6:00 p.m. on December 23, 1987, John Benavides, a friend of appellant's, came over to help him work on a motorcycle and stayed working on the machine alone. Later about 11:00 p.m. the deceased Lopez came to the apartments and was heard pounding on the door of a vacated unit; the appellant told the deceased the tenants had moved. The deceased then came to the appellant's apartment and asked to come in and celebrate the holidays. The deceased pretended to know the appellant, but appellant denied it. Nevertheless he permitted the deceased to enter the apartment. Navarro described Lopez as a "happy drunk" who came in, sat

---

1. Presiding Judge, Retired, Texas Court of Criminal Appeals, sitting by assignment by the Chief Justice of the Supreme Court of Texas pursuant to TEX.GOV'T CODE ANN. § 74.003 (Vernon 1989).

beside her and gave her a "holiday hug." Appellant, who was drinking vodka and was drunk, told Lopez to "get away from his old lady." Lopez moved and the two men continued to talk. Later Lopez moved close to Navarro again and appellant repeated his warning, and stated that it was the last warning. When Lopez moved again to sit near Navarro, appellant told him to sit where he was told. When Lopez responded: "Oh, Pedro, you know you won't shoot," he was shot in the head by the appellant with a .38 automatic. Lopez fell back on the daybed or couch with blood emitting from his mouth. Appellant said the deceased was "faking it" and Navarro then heard Benavides say "You killed him, he's dead." Benavides turned off the lights, and appellant took Navarro and Benavides outside telling them to "play it cool" and they could take care of the body later. Navarro was frightened and didn't know what appellant would do next. Later they all came back into the apartment and found that Lopez was still making gurgling noises. Appellant ordered Benavides out of the apartment, then tore Navarro's clothing off, and raped her on the daybed where the dead or dying Lopez lay. Later Benavides knocked and was permitted inside the apartment. Appellant then fell asleep but Navarro was afraid to move for appellant had threatened to kill her and Benavides if they said anything. After awakening, the appellant repeated his threats and ordered Benavides and Navarro to place the body in the trunk of the deceased's car. They had to drag the body, and then clean up the bloody mess. Appellant and Navarro drove the deceased's car to the K–Mart parking lot and left the car. Benavides followed in another vehicle, and took them back to the apartment.

Navarro stayed with appellant until March 14, 1988, because she was frightened, and because appellant kept repeating his threats. Due to her nightmares about the shooting she decided to leave and took the murder weapon and a box of bullets with her. On March 26, 1988, while she was walking to work Navarro saw appellant's car driving by. She ran and shots were fired at her. When Navarro reached the restaurant where she was employed, she told her boss, and the police were called. She gave the police the murder weapon and bullets and name of Benavides.

A firearm expert testified that the weapon given to him to test was in fact the weapon that had fired the fatal shot.

John or Juan Benavides generally corroborated Navarro's version of the facts relating to the shooting. He stated that he went to appellant's apartment to work on appellant's motorcycle on the day in question; that he recalled Lopez's arrival, remembering that Lopez entered appellant's apartment. He took no part in any conversations that followed. Later he heard a shot fired and saw appellant with a gun in his hand, and Lopez on the couch with a shot in the head and blood gurgling out of his mouth. Benavides vomitted. Appellant threatened to kill Benavides, his wife and child if he said anything. Benavides then related how he and Navarro later placed the body of the deceased into the trunk of an automobile. He followed as appellant and Navarro drove the deceased's car to the K–Mart parking lot and returned them to the apartment. On March 24, 1988, the appellant told Benavides that Navarro had left, and had taken appellant's gun and shells. Appellant stated he wanted to find her and to kill her.

The State offered evidence concerning appellant's subsequent arrest, and introduced appellant's exculpatory statement made to the police.

Appellant offered witnesses who told of seeing Marie Navarro carrying a gun. At least one of these witnesses told of Navarro shooting over a man's head "who was bothering the trash." None of these witnesses were fact witnesses to the fatal shooting.

Appellant first centers his attack upon the sufficiency of the evidence based on his claim that Navarro and Benavides are accomplice witnesses and their testimony was not corroborated as required by TEX. CODE CRIM.PROC.ANN. art. 38.14. Appellant notes that one accomplice witness cannot corroborate another, *Chapman v.*

*State,* 470 S.W.2d 656, 660 (Tex.Crim.App. 1971), and that when the proper test is applied, *see Edwards v. State,* 427 S.W.2d 629, 632 (Tex.Crim.App.1968), there is no incriminating evidence, independent of the testimony of the accomplice witnesses, tending to connect the appellant with the commission of the offense charged.

The trial court did not consider Navarro and Benavides to be accomplice witnesses. It did not submit the issue of accomplice witnesses to the jury as a matter of law or as a fact question. There was no objection to the charge on this basis.

An accomplice witness is an individual who participated with the accused before, during or after the commission of the crime for which the accused is on trial. *Creel v. State,* 754 S.W.2d 205, 213 (Tex.Crim.App. 1988); *Russell v. State,* 598 S.W.2d 238, 249 (Tex.Crim.App.1980). A witness who cannot be prosecuted for the same offense with which the accused is charged is not an accomplice witness for the purpose of corroboration requirement. *Gamez v. State,* 737 S.W.2d 315, 322 (Tex.Crim.App.1987); *Creel,* 754 S.W.2d at 213.

■ Under the former penal code an accessory after the fact was an accomplice witness. *Oliver v. State,* 551 S.W.2d 346, 349 (Tex.Crim.App.1977). The same is not true under the 1974 Penal Code. *Easter v. State,* 536 S.W.2d 223, 228 (Tex.Crim.App. 1976). The 1974 Penal Code abolished the distinction between a principal and an accomplice [to the crime] and eliminated an accessory [after the fact] as a party to the crime, creating instead a separate and distinct offense of hindering apprehension or prosecution. *Crank v. State,* 761 S.W.2d 328, 349 (Tex.Crim.App.1988); *Gooch v. State,* 665 S.W.2d 112, 116 (Tex.Crim.App. 1984); *Easter,* 536 S.W.2d at 228; *see also* TEX.PENAL CODE ANN. art. 38.05. Thus an accessory after the fact [terminology under former code] is not an accomplice witness unless there is an agreement prior to the crime for the individual to act as an accessory after the fact. *Clark v. State,* 692 S.W.2d 203, 204 (Tex.App.—Fort Worth 1985, no pet.).

It is well settled that the complicity with the accused in other crimes does not render the testimony of that individual that of an accomplice witness to the crime for which the accused is on trial. *Gamez v. State,* 737 S.W.2d 315 (Tex.Crim.App.1987); *Creel v. State,* 754 S.W.2d 205, 213 (Tex.Crim. App.1988). Further, mere presence at the scene of the crime is insufficient to make a witness an accomplice witness. *Brown v. State,* 640 S.W.2d 275, 279 (Tex.Crim.App. 1982). Moreover, a witness is not deemed an accomplice witness because he knew of crime, but failed to disclose it or even concealed it. *Smith v. State,* 721 S.W.2d 844, 851 (Tex.Crim.App.1986); *Marlo v. State,* 720 S.W.2d 496, 499 (Tex.Crim.App.1986).

■ In the instant case neither Benavides nor Navarro was co-indictee or charged with the murder of Frank Lopez. Appellant's shooting of Lopez caught them by surprise. There was no previous agreement with appellant. Both testified their acts after the murder were at appellant's instructions and because of his threats and their fear of him. Even if it were otherwise, their post-shooting acts would not have constituted them accomplice witnesses. Appellant's first argument under this point of error is without merit.

■ Appellant's second assault upon the sufficiency of the evidence comes in the form of a claim that the State failed to disprove the exculpatory written statement of the appellant, which the State introduced during its case in chief, and the oral exculpatory statements of the appellant elicited from a defense witness on cross-examination. Appellant relies upon the so-called *Palafox* rule that "where the State puts in evidence the statement of the accused party which exculpates the accused, and does not directly or indirectly disprove them, the accused is entitled to an acquittal." *Palafox v. State,* 608 S.W.2d 177, 181 (Tex.Crim. App.1979). Appellant urges that the rule applies whether the defendant's statement is written or put into evidence by witnesses who heard it said. *Thompson v. State,* 621 S.W.2d 624, 628 (Tex.Crim.App.1981). Appellant observes that the rule applies only when the defendant chooses not to testify.

*Dunn v. State*, 721 S.W.2d 325, 332 (Tex. Crim.App.1986); *Green v. State*, 761 S.W.2d 824, 827 (Tex.App.—Dallas 1988, no pet.), and claims its application here because he did not testify.

The Texas Rules of Criminal Evidence became effective September 1, 1986. Appellant's trial took place in April, 1989. The State takes the position that the adoption of TEX.R.CRIM.EVID. 607 has abolished or destroyed the underlying rationale for the voucher rule evidenced by *Palafox*. Rule 607 states, "The credibility of a witness may be attacked by any party, including the party calling him." This rule rejects the common law voucher rule upon which *Palafox* was premised. Therefore for cases tried after the effective date of the Texas Rules of Criminal Evidence, such as the instant case, *Palafox* does not apply. The State is not bound by the exculpatory claims in a statement it introduces. *Russeau v. State*, 785 S.W.2d 387, 390 (Tex. Crim.App.1990). Appellant's second argument under this point of error is without merit.

There is another matter of concern to which the State calls our attention. Although unnecessary in view of the discussion above, the court, without objection by the State, instructed the jury on the written exculpatory statement of the appellant. The jury was charged that the State was bound by the exculpatory statement until it disproved the same beyond a reasonable doubt, and was instructed to acquit the appellant unless the State sustained its burden. The State recognizes that the *Benson–Boozer* line of cases has long tentacles that have ensnarled the instant case. *Benson v. State*, 661 S.W.2d 708 (Tex.Crim. App.1982), *cert. denied* 467 U.S. 1219, 104 S.Ct. 2667, 81 L.Ed.2d 372; *Boozer v. State*, 717 S.W.2d 608 (Tex.Crim.App.1984). These cases hold that the sufficiency of the evidence must be measured against the jury charge as given even if the jury instruction is erroneous, and the State has not objected to increasing its burden of proof.

■ The State insists it has met its increased burden. We agree. The record is replete with evidence which refutes directly and indirectly the truth of appellant's written statement. *See Rogers v. State*, 687 S.W.2d 337, 345 (Tex.Cr.App.1985). It is axiomatic that the jury is the trier of the facts, the judges of the credibility of the witnesses and the weight to be given their testimony. *Vanderbilt v. State*, 629 S.W.2d 709, 716 (Tex.Crim.App.1981), *cert. denied*, 456 U.S. 910, 102 S.Ct. 1760, 72 L.Ed.2d 169 (1982); *Coe v. State*, 683 S.W.2d 431, 438 (Tex.Crim.App.1985). The same is true of other evidence offered.

The standard of review for the sufficiency of evidence is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of facts could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 n. 12, 99 S.Ct. 2781, 2789 n. 12, 61 L.Ed.2d 560 (1979). The preceding standard is to be employed in both direct and circumstantial evidence cases. *See Chambers v. State*, 711 S.W.2d 240, 244–245 (Tex.Crim.App. 1986); *Christian v. State*, 686 S.W.2d 930, 934 (Tex.Crim.App.1985); *Houston v. State*, 663 S.W.2d 455, 456 (Tex.Crim.App. 1984); *see also Butler v. State*, 769 S.W.2d 234 (Tex.Crim.App.1989).

We conclude that any rational trier of facts could have found beyond a reasonable doubt the essential elements of the crime, viewing the evidence in the light most favorable to the jury's verdict. Appellant's first point of error is overruled.

■ In his second point of error appellant contends the trial court erred when the State was permitted over objection to impeach Sandra Davis, a defense witness, with a fourteen year old conviction for prostitution.

On cross-examination the State was permitted to impeach Sandra Davis with a 1975 conviction for prostitution, and with a 1980 federal conviction for conspiracy to manufacture methamphetamine. Davis admitted the convictions and that she had been released on June 7, 1984, from the federal penitentiary. Appellant's trial took place in April, 1989, a little less than 5 years from Davis' release. Appellant ob-

jected on the ground of remoteness and the fact that the 1975 conviction was for a misdemeanor.

Regarding the impeachment of witnesses, the general rule has long been that a witness by testifying places her or his credibility in issue, and the opposing party may seek to impeach that credibility by proof that the witness had been convicted of any felony offense, or a misdemeanor involving moral turpitude. Even then, however, such offenses must not be so remote in time so as not to be relevant to the present credibility of the witness. *Taylor v. State*, 612 S.W.2d 566, 572 (Tex.Crim.App.1981). The question of remoteness has been held to largely be a matter within the sound discretion of the trial court although the general rule of thumb was that if the release from confinement is less than 10 years prior, the conviction may be admitted for impeachment purposes. *Miller v. State*, 549 S.W.2d 402, 403 (Tex.Crim.App 1977); *Davis v. State*, 545 S.W.2d 147, 150 (Tex.Crim.App.1976); *Bustillos v. State*, 464 S.W.2d 118 (Tex.Crim.App.1971). In this State appellate courts have traditionally looked to evidence of lack of reformation, or an intervening felony conviction or a conviction for a crime involving moral turpitude as a circumstance which removes the remoteness objection to a conviction more than ten years old. *See McClendon v. State*, 509 S.W.2d 851, 855 (Tex.Crim.App.1974); *Crisp v. State*, 470 S.W.2d 58, 59 (Tex.Crim.App.1971); *see also Roberts v. State*, 634 S.W.2d 767 (Tex.App.—Fort Worth 1982, pet. ref'd). And in connection with these rules it has been held that prostitution is an offense involving moral turpitude, and a conviction therefor may be used for impeachment if not too remote. *See Holguin v. State*, 480 S.W.2d 405 (Tex.Crim.App.1972); *Johnson v. State*, 453 S.W.2d 828 (Tex.Crim.App.1970); *Robertson v. State*, 685 S.W.2d 488, 492 (Tex.App.—Fort Worth 1985, no pet.).

The present case is governed by Rule 609 of the Texas Rules of Criminal Evidence which provides in part:

(a) General Rule. For the purpose of attacking the credibility of a witness, evidence that he has been convicted of a crime shall be admitted if elicited from him or established by public record but only if the crime was a felony or involved moral turpitude, regardless of punishment, and the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to a party.

(b) Time limit. Evidence of a conviction under this rule is not admissible if a period of more than ten years has elapsed since the date of the conviction or of the release of the witness from the confinement imposed for that conviction whichever is the later date, unless the court determines, in the interests of justice, that the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect.

The rule would appear to conform largely with previous Texas criminal practice. The revitalization doctrine still appears alive and well. Recently the issue of renewed relevance of a conviction older than ten years was addressed in *Allen v. State*, 740 S.W.2d 81, 83 (Tex.App.—Dallas 1987, pet. ref'd). There, two 17 year old convictions were held not to be too remote for impeachment use where there was an intervening nine year old conviction and an intervening four year old conviction. In the instant case the 1975 conviction for prostitution was rendered admissible for impeachment by the intervening 1980 federal conviction from which the witness was released less than five years before trial. It is clear from the record the trial court made its finding that the probative value of admitting the evidence outweighed its prejudicial effect. No objection was offered on this basis. No error was presented in the admission of the prior convictions. Appellant's second point of error is overruled.

The judgment is affirmed.