Roy George **THOMAS**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 09–89–115 CR.

Court of Appeals of Texas, Beaumont.

June 13, 1991.

Gerald Scheve, Houston, for appellant.

Peter Speers, III, Dist. Atty. and Kathleen Hamilton, Asst. Dist. Atty., Conroe, for the State.

Before WALKER, C.J., and BROOKSHIRE and ONION,* JJ.

## OPINION

ONION, Justice (Retired).

This is an appeal from a conviction for delivery of a controlled substance, namely, cocaine. After finding the appellant guilty, the jury found the enhancement allegations as to one prior felony conviction to be "true", and assessed punishment at forty (40) years imprisonment.

Appellant advances seven points of error. Initially, appellant contends that the "conviction herein must be set aside and a judgment of acquittal entered because the evidence makes it clear that no controlled substance was ever transferred, either actually or constructively, to I.E. Jordan, as alleged in the indictment and required by

the trial court's charge to the jury." We agree and will reverse the judgment of conviction.

The record reflects that on October 21, 1987, Ira Edward Jordan, an undercover officer for the Conroe Police Department, was given an assignment. He was instructed to meet a confidential informant and a suspect who was to make a delivery of a half-ounce of cocaine at the Crossroads Shopping Center in Conroe. Wearing a body mike, and with other officers in the area listening to any conversation he might have, Jordan met the informer and the suspect, Bobby Joe Franklin, at the shopping center. Arrangements were made to pay $600.00 for the cocaine. Franklin left to make a phone call. The trio then went to Franklin's residence on Avenue M. Fearing for his safety, Jordan told Franklin he would await the delivery of the cocaine at the First Street baseball park, three or four blocks away. Thirty or forty minutes later Franklin and the informant arrived and told Jordan a problem had developed with the delivery of the cocaine, "that it was going to be a while before the stuff got there" but to be patient. Later Franklin left the area and returned, and at one point a call was placed over the mobile phone in Jordan's vehicle to a number later shown registered to the appellant. Jordan talked to some man whose voice he could not identify and assured him that he (Jordan) had the money. Eventually, a white car arrived and a man later identified as the appellant got out. The car left. Franklin talked to the appellant and then Franklin asked Jordan to give him $100.00 in advance, but Jordan refused. Jordan then attempted to approach the appellant who backed away. Franklin then went to talk to the appellant. Jordan saw something being exchanged, but he could not identify what it was. Then Franklin came back and told Jordan "[i]t's all right." The record then reflects that Jordan testified:

> His typical line of b.s. that he was giving me and I go, "Let me see it." He

*Presiding Judge, Retired, Texas Court of Criminal Appeals, sitting by assignment pursuant to

TEX.GOV'T CODE ANN. § 74.003(b) (Vernon 1988).

showed it to me and I went up to grab it and he wouldn't turn it loose, and I looked at it and said, "It looked like dynamite shit," and that's our code word to take the subject down. I had six hundred ($600.00) dollars in cash and it was in twenty dollar bills. And I started counting them out to him, mainly to kill time to give the bust signal—the bust team time to get out of the woods and get over to us. As I counted out the end of it, I reached over and grabbed Bobby Joe by the arm and yelled at him, "Police." At this time, he let go of the dope he had in his hand, he turned around and hit me. The fight started. He and I went to the ground fighting.

. . . .

Bobby Joe and I were back here when I was counting out the money to him, and when I reached over and grabbed him, he had the dope in this hand because I grabbed this hand, which was right next to me and he dropped the dope and that when he turned around and hit me and the fight, was on.

Both Franklin and the appellant were arrested. The chain of custody was established and it was shown that the "dope" was cocaine weighing 11.65 grams and was 79.6 percent pure.

In light of appellant's contention that there was no delivery as alleged and as required by the trial court's charge, we first examine the indictment which provides in pertinent part that appellant on or about October 21, 1987,

[D]id then and there intentionally and knowingly deliver to I.E. Jordan a controlled substance, namely cocaine by aggregate weight, including any adulterants and dilutants, of less than twenty-eight (28) grams by actually transferring and constructively transferring and offering to sell said controlled substance.[1]

In its charge the court instructed the jury in the definitional portion as follows:

## I.

Our law provides that a person commits an offense if he knowingly or intentionally delivers cocaine, a controlled substance.

By the term "deliver" or "delivery" as used in this charge is meant the actual or constructive transfer from one person to another of cocaine.

The court also abstractly charged on the law of parties and then submitted the issues of delivery by constructive transfer and as a party to actual delivery as follows:

## IV.

### (DELIVERY BY CONSTRUCTIVE TRANSFER)

Now, if you find from the evidence beyond a reasonable doubt that on or about the 21st day of October, 1987, in Montgomery County, Texas, Roy George Thomas, the defendant had a controlled substance, to wit, cocaine under his control, and that he handed the controlled substance to another person, namely Bobby Joe Franklin, knowing that the cocaine would be delivered to another person, and that Bobby Joe Franklin did so deliver the said cocaine to I.E. Jordan, and that the cocaine was in an amount, by aggregate weight, including any adulterants and dilutants, of less than 28 grams, as alleged in the indictment, then you will find the defendant guilty of the offense of Delivery of a Controlled substance as charged in the indictment.

Unless you so find beyond a reasonable doubt, or if you have a reasonable doubt thereof, then you will consider the following section of this charge to determine whether or not the defendant is guilty of delivery of a controlled substance as a party to an offense.

## V.

### (Delivery as a Party To An Offense)

Now, if you find from the evidence beyond a reasonable doubt that Bobby Joe Franklin, on or about the 21st day of October, 1987, in Montgomery County, Texas, did then and there intentionally or

1. Appellant acknowledges he filed no motion to quash the indictment.

knowingly deliver a controlled substance, to wit, cocaine of less than 28 grams, including any adulterants and dilutants, to I.E. Jordan, and that the defendant, Roy George Thomas, acting with intent to promote or assist the commission of the offense of Bobby Joe Franklin, solicited, encouraged, directed, aided or attempted to aid Bobby Joe Franklin to commit the offense of Delivery of Cocaine, then you will find the defendant, Roy George Thomas, guilty of the offense of Delivery of a Controlled Substance as charged in the indictment.

Unless you so find beyond a reasonable doubt, or if you have a reasonable doubt thereof, you will find the defendant not guilty.

The jury returned the following verdict:

We, the Jury, find the defendant, Roy George Thomas, Guilty of the offense of Delivery of a Controlled Substance as charged in the indictment.

/s/ Homer H. Hershey
Foreman of the Jury

In the charge the court limited the definition of "deliver" or "delivery" to the actual or constructive transfer from one person to another of cocaine.[2] The court then authorized the jury to convict appellant under the instructions given of delivery of cocaine by constructive transfer or as a party to the delivery of cocaine. Both of these theories as submitted required the jury to find beyond a reasonable doubt that Bobby Joe Franklin delivered cocaine to I.E. Jordan before it could convict the appellant Thomas. The jury returned a general verdict not indicating under which theory it had found the appellant guilty. It is to be observed that the State abandoned any "of-fer to sell" theory. The same was not submitted to the jury by the trial court in its charge, nor was it included in the court's definition of "deliver" or "delivery."[3]

In passing upon the sufficiency of the evidence the *Benson—Boozer* line of cases must be kept in mind. *Benson v. State,* 661 S.W.2d 708 (Tex.Crim.App.1982), *cert. denied* 467 U.S. 1219, 104 S.Ct. 2667, 81 L.Ed.2d 372 (1984); *Boozer v. State,* 717 S.W.2d 608 (Tex.Crim.App.1984). These cases hold that the sufficiency of the evidence must be measured against the jury charge, even if the instruction is erroneous—and the State has not objected to increasing its burden of proof. *See also Saunders v. State,* 794 S.W.2d 91, 92 (Tex. App.—San Antonio 1990, pet. granted); *Husting v. State,* 790 S.W.2d 121, 125 (Tex. App.—San Antonio 1990, no pet.).

Under the evidence in the instant case the appellant made no actual "delivery" of his own at all to Jordan. Appellant argues that his conviction under either theory submitted to the jury rests upon whether Franklin made a delivery to Jordan.

■ TEX.REV.CIV.STAT.ANN. art. 4476–15, § 1.02(8) contemplated three types of delivery: (1) an actual transfer; (2) a constructive transfer; and (3) an offer to sell. *Daniels v. State,* 754 S.W.2d 214, 217 (Tex. Crim.App.1988); *Queen v. State,* 662 S.W.2d 338, 340 (Tex.Crim.App.1983); *Ferguson v. State,* 622 S.W.2d 846, 848 (Tex. Crim.App.1980). These terms are not defined by the legislature for the purpose of the Controlled Substances Act, the Penal Code or elsewhere. *Daniels,* 754 S.W.2d at

2. Section 1.02(8) of the Texas Controlled Substances Act in effect at time of offense alleged and at trial provided in part:
 'Deliver' means to transfer, actually or constructively, to another a controlled substance, counterfeit substance, or drug paraphernalia, regardless of whether there is an agency relationship. The term includes offering to sell a controlled substance, counterfeit substance, or drug paraphernalia.
 TEX.REV.CIV.STAT.ANN. art. 4476–15 § 1.02(8) (Vernon 1976).
 Now see TEX.HEALTH & SAFETY CODE ANN. § 481.-002(8) (Vernon Pamph.1991).

3. Section 1.02(8) of the Texas Controlled Substances Act in effect at time of appellant's trial provided in part:
 Proof of an offer to sell must be corroborated by a person other than the offeree or by evidence other than a statement of the offeree.
 TEX.REV.CIV.STAT.ANN. art. 4476–15 § 1.02(8) (Vernon 1976).
 Now see TEX.HEALTH & SAFETY CODE ANN. § 481.-183(a) (Vernon Pamph.1991).

219. When statutory words are not defined or shown to have been used in a particular sense, they are ordinarily given their plain meaning. *Campos v. State*, 623 S.W.2d 657, 658 (Tex.Crim.App.1981); *Sanford v. State*, 492 S.W.2d 581, 582 (Tex.Crim.App.1973). *See also Whaley v. State*, 717 S.W.2d 26, 30–31 (Tex.Crim.App.1986).

Giving the term "actual delivery" its plain meaning, the Court of Criminal Appeals has stated the term "consists in *completely* transferring the real possession and control of a controlled substance from one person to another person." *Conaway v. State*, 738 S.W.2d 692, 695 (Tex.Crim. App.1987) (emphasis supplied); *see also Coleman v. State*, 794 S.W.2d 926, 928 (Tex.App.—Houston [1st Dist.] 1990, no. pet.).

In *Daniels*, 754 S.W.2d at 219–20 a survey of the plain meaning of "delivery" was undertaken:

In Black's Law Dictionary, Fifth Edition (1979) at pp. 385, 386, we find "delivery" defined:

"The act by which the res or substance thereof is placed within the actual or constructive possession or control of another.

. . . . .

"What constitutes delivery depends largely on the intent of the parties. It is not necessary that delivery should be manual delivery ... (*Jones v. Young*, 539 S.W.2d 901, 905 (Tex.Civ. App.—Texarkana 1976)....

"Actual delivery consists in giving real possession to the vendee or his servants or special agents who are identified with him in law and represent him. It is a formal immediate tradition of the property to the vendee.

"Constructive delivery is a general term, comprehending all those acts which, although not truly conferring a real possession of the thing sold on the vendee, have been held, by construction of law, equivalent to acts of real delivery."

Ballentine's Law Dictionary, 3rd Ed. (1969) at p. 329 defines "delivery" as

"a handing over; the surrender of possession to another

* * * * * *

"For some purposes, a delivery is accomplished by nothing more than making a thing available to another, placing it within his reach, *notwithstanding there is no actual handing of the thing from one person to another*." (Emphasis supplied.)

Webster's Third New International Dictionary (Unabridged Ed.1961) defines "constructive delivery" as "... a delivery not accompanied by an actual transfer of possession of the property delivered yet recognized as having been intended by the parties and as sufficient in law...."

 The State recognizes that there was no actual delivery or transfer of the cocaine between Franklin and Jordan, but claims "delivery" in the plain meaning of the term was made. Prior to the arrest, there was no relinquishment or transfer of possession or control of the cocaine to Jordan by Franklin. According to Jordan's testimony Franklin never afforded him access to the substance. Jordan saw "it" but Franklin would not turn the substance over to Jordan. In fact, Franklin never relinquished control until the fight started and Jordan had yelled "Police". A constructive transfer should include a transfer where the parties have taken all the steps necessary to place the goods at the disposal of the transferee. *See Torres v. State*, 667 S.W.2d 190, 194 (Tex.App.—Corpus Christi 1983) *rev'd on other grounds*, 698 S.W.2d 677 (Tex.Crim.App.1985). That did not occur here.

The State's reliance upon *Caraballo v. State*, 706 S.W.2d 773 (Tex.App.—Houston [14th Dist.] 1986, pet. ref'd) and *Endsley v. State*, 702 S.W.2d 307 (Tex.App.—Houston [1st Dist.] 1985, pet. ref'd) is misplaced. In *Caraballo*, the bag was handed to undercover officer Guerra to inspect the cocaine for the purpose of making a sale. Guerra opened the bag and took out a plastic baggie containing a white powdery substance. When asked for money, Guerra left the apartment and gave the bust signal. The

court held that the dominion and control of the cocaine had passed from the defendant to Guerra in an actual transfer, even though Guerra did not maintain control of the contraband when he left the apartment. In *Endsley*, even momentary possession of LSD was sufficient to show actual delivery. The police had certain parties under surveillance in a public park. After an exchange of money, Edenfield, the purchaser, took a seat at a park table. The defendant walked to the table and laid a piece of plastic on the table. Edenfield picked it up, examined it, and laid it down on the table. When the police approached the defendant knocked the package off of the table. These cases are a far cry from the instant one.

The standard for review of the sufficiency of evidence is whether, viewing the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, n. 12, 99 S.Ct. 2781, 2789 n. 12, 61 L.Ed.2d 560 (1979); *Butler v. State*, 769 S.W.2d 234, 239 (Tex.Crim.App.1989); *Sharp v. State*, 707 S.W.2d 611, 614 (Tex.Crim.App.1986), *cert. denied*, 488 U.S. 872, 109 S.Ct. 190, 102 L.Ed.2d 159 (1988). The standard is applicable to both direct and circumstantial evidence cases. *Chambers v. State*, 711 S.W.2d 240, 244–45 (Tex.Crim.App.1986); *Christian v. State*, 686 S.W.2d 930, 934 (Tex.Crim.App.1985).

Testing the sufficiency of the evidence against the charge given, and applying the standard of review enunciated above, we conclude that no rational trier of fact could have found beyond a reasonable doubt all of the essential elements of the offense charged. Appellant's initial point of error is sustained.

In view of our disposition of the first point of error, we need not reach appellant's other contentions. Because the evidence is insufficient, the conviction must be set aside and an acquittal ordered. *Burks v. United States*, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978); *Greene v. Massey*, 437 U.S. 19, 98 S.Ct. 2151, 57 L.Ed.2d 15 (1978).

The judgment is reversed and the appellant is ordered acquitted.

REVERSED AND ACQUITTED.

BROOKSHIRE, Justice dissenting.

With a genuine and sincere respect I must file this dissent. As I perceive the record, at least in relevant part, the following transpired. The indictment charged Bobby Joe Franklin and Roy George Thomas with delivering to Jordan—both intentionally and knowingly—a controlled substance, cocaine, by aggregate weight less than 28 grams. The indictment further charged that the delivery was by either actual transfer or constructive transfer or offering to sell the said controlled substance.

There was an enhancement paragraph in the indictment that presented to the court that prior to the commission of the October 1987 delivery, the Appellant, Roy George Thomas, on the 5th day of November, 1979, in Harris County in Cause No. 299972, the said Roy George Thomas, under the name of Roy George Thomas, was convicted of a felony, to-wit: voluntary manslaughter and that the said conviction had become final prior to the commission of the cocaine matter. The Court's opinion affirmatively sets out that the defendant acknowledged that he had filed no motion to quash the indictment.

A peace officer was contacted by an informant. The informant told the police officer that there was a third person wanting to sell cocaine. Note that the first information from the informant was that the third person was desirous of selling cocaine. An investigation followed. Evidence exists that following the investigation a series of events took place between and among Jordan, Bobby Joe Franklin and Appellant. Other officers were involved and arrests were made. The main investigator was Ed Jordan. He had been with the task force involved for a few years. The initial meeting with Jordan was on or about October 21, 1987. The drug deal took place at Avenue M and S. 2nd Street. The First Street ballpark was located at that point. There existed close, careful and

accurate monitoring by means of an audio-transmitter being used by Detective Jordan. The audiotape made some accurate recordings. The recordings truly, correctly and accurately depicted the actual words and conversations that occurred between Jordan and the person desiring to sell the cocaine and thereby deal in the cocaine.

The first contact was with Bobby Joe Franklin. Franklin advised or at least told Jordan that it was going to take a little while for the "stuff" to get there and Jordan should not be impatient. The record demonstrates that Bobby Joe did not have the dope on him during the early part of the conversation. Bobby Joe was waiting for somebody to deliver the cocaine to him so that he could sell it or transfer it to Jordan. Bobby Joe repeated this statement in substance several times and he also repeated that Bobby Joe's brother-in-law actually had the dope or cocaine. Bobby Joe referred to this brother-in-law as "Ranger". Ranger would arrive shortly.

Other officers had hidden themselves in a wooded area. These officers had hand-held radios or devices with them and certain earphones so that they could monitor the events. Jordan was wearing what was referred to as a "body mike". At a somewhat later point, Bobby Joe told Jordan to deliver the money and that Bobby Joe would then get the "stuff", but Detective Jordan said that he was not going to give up the money until you get me the stuff. The agreement was that Bobby Joe would get half an ounce of cocaine for Jordan in exchange for $600 in cash.

At one point it was decided to change locations because the initial possessor of the cocaine, the Appellant, preferred to do so. But Bobby Joe reassured Jordan that the "dude" was coming to Bobby Joe Franklin's house and that the "dude" was Franklin's brother-in-law and that everything was cool. The "dude" was the Appellant. Again, the "dude" was referred to as Ranger, and the brother-in-law of Bobby Joe. It was said that Ranger, the Appellant, was a disk jockey. Bobby Joe had explained that the cocaine would be good cocaine, according to Ranger. The Appel-

lant was, in fact, a disk jockey, using a nickname of "Ranger". Appellant was the brother-in-law of Bobby Joe. Appellant's phone number was set out. From driver's license records and other documents signed by Appellant, the record reflects that the Appellant's phone number was clearly established.

A short time later Bobby Joe decided to place a telephone call from Jordan's mobile telephone to inquire about the delay or the problem in getting the cocaine to Bobby Joe so that it in turn could be sold, delivered or transferred. The phone number that Bobby Joe used to contact the Appellant was the Appellant's own telephone number. Apparently, both Bobby Joe and Jordan talked to the Appellant at his phone number and were reassured that the cocaine was on the way. Jordan assured the persons involved that he (Jordan) had the necessary money.

After this telephone conversation to the personal, individual telephone number of Appellant, Bobby Joe stated that he could handle this amount of cocaine any day in the week. Bobby Joe's position was that he was part of an organization and that the organization could do the following: "we get it, get rid of it, and make money out of it". Bobby Joe did state that his brother-in-law Ranger did not want to be actually seen but that his brother-in-law wanted to make the deal and get on. The same telephone number was called a second time to discuss the transaction. The speaker at the telephone number told Bobby Joe that he, the speaker, was going first to Bobby Joe's house. Bobby Joe left the area; he came back later.

There was a small white car following Bobby Joe's vehicle. A black male who was later identified as Roy George Thomas, the Appellant, got out of the white car and then the white car left the area. Then Bobby Joe started walking away from Jordan and over to the Appellant. Jordan saw something that was actually exchanged from hand-to-hand, from the Appellant to Bobby Joe, and Bobby Joe immediately came back to Jordan with the cocaine. The cocaine was shown to Jordan. Jordan in-

spected the cocaine. Jordan counted out $600 in cash. Subsequent analysis of the contraband clearly demonstrated that the cocaine was 79 percent pure and had a street value of around $4,000.

The record reflects that the person who was a distance away was hollering and he kept hollering at Bobby Joe and Jordan. Bobby Joe said back, "he's got the money" or something like that. Then Bobby Joe said, I'll go get the stuff. Bobby Joe left and went over to the individual suspect. They were standing closely side-by-side. There is some evidence in the record which I perceive to be of probative valuation that Jordan took delivery and exercised dominion over the cocaine. Jordan inspected the cocaine, saying it looks like "dynamite s—— to me."

Certain statements exist in the Court's opinion such as: "[u]nder the evidence in the instant case the appellant made no actual 'delivery' of his own *at all* to Jordan." I cannot agree that this mandates an acquittal under the entire record. Appellant, himself, delivered the cocaine to Bobby Joe. And again, I read in the Court's opinion: "[t]esting the sufficiency of the evidence against the charge given, and applying the standard of review enunciated above, we conclude that *no rational trier of fact* could have found beyond a reasonable doubt all of the essential elements of the offense *charged*. Appellant's initial point of error is sustained." (emphasis added). I cannot agree. The charge of the court in general stated that deliver or delivery could either be actual or constructive. The indictment alleged either an actual or constructive transfer. The court instructed that a constructive transfer in substance means a transfer of a controlled substance either belonging to the person charged or under either his direct or indirect control by some other persons or *by some other manner,* but at the instance or direction of the person charged.

The court also properly charged on the law of parties and on intentional acts and on acts performed knowingly. In my opinion, respectfully submitted, a careful review and analysis of the charge, especially that part of the charge dealing with deliver or delivery, actual or constructive or transfer, either actual or constructive demonstrates that the evidence is amply sufficient to sustain the verdict of the jury. The court's charge covers the situation where the controlled substance belonging to the person charged or under his either direct or indirect control by some manner accomplishes the transfer.

Simply because a fight ensued which resulted in a ground fight of hostility and violence and the cocaine was dropped to the ground does not, in my opinion, considering the record as a whole, cause the evidence to be insufficient. The Appellant had completed his part of the deal. Appellant's delivery or transfer was complete as to his own actions. The fact that the law officers were trying to protect another officer would not be, in my opinion, a defense in favor of Appellant, nor would such protective acts make the evidence insufficient. Furthermore, the jury was charged:

> In determining the credibility of a witness, you may consider any matter in evidence that has a tendency in reason to prove or disprove the truthfulness of his/her testimony, including but not limited to the following:
>
> His/her demeanor while testifying and the manner in which he/she testifies;
>
> The character of his/her testimony;
>
> The extent of his/her capacity to perceive, to recollect, or to communicate any matter about which he/she testifies;
>
> The extent of his/her opportunity to perceive any matter about which he/she testifies;
>
> The existence or nonexistence of a bias, interest, or other motive;
>
> A statement previously made by him/her that is inconsistent with his/her testimony;
>
> The existence or nonexistence of any fact testified to by him/her;
>
> His/her attitude toward the action in which he/she testifies or toward the giving of testimony.

The above was not challenged by objection.

After both sides rested there was an afternoon session. The court had recited

that certain objections to the charge on behalf of the defense had been somehow proffered. I do not think this complies with the rules, but apparently the objections concerned accomplice testimony and the definition of constructive transfer. The court stated that it was going to grant the request on limited instructions as to prior convictions, but that the complained-of matters regarding the accomplice testimony was denied and "your objection" to the charge regarding constructive transfer is overruled. At this time I cannot find the objections as such that were allegedly made by the defense. The trial court does refer to them in a general way.

Again, in my humble opinion, I simply cannot comprehend why any "messing up" on the part of Bobby Joe Franklin, if he did "mess up", would enure to the benefit of the actual original owner of the cocaine. After the Appellant fully parted with the cocaine and delivered the same to Bobby Joe, the only thing he was interested in under this record was the $600 cash which was being counted out to Bobby Joe.

I do find in the transcript two hand-written requests to the jury by Appellant. The first hand-written requested charge was an instruction to the effect that Bobby Joe Franklin was an accomplice to any offense; and in substance, the jury was instructed that you [the jury] cannot convict the defendant upon the testimony [apparently of the accomplice] unless you first believe that his testimony is true and shows the guilt of the defendant as charged in the indictment and then you cannot convict the defendant unless you find the accomplice's testimony is corroborated by other evidence tending to connect the defendant with the offense charged. That in substance was the first requested charge. I find only one other.

The second hand-written matter was an objection to the charge. As I understand it, the objection was to the definition of constructive transfer, because Appellant contended in TEX.REV.CIV.STAT.ANN. art. 4476–15 of the Controlled Substances Act, no definition of constructive transfer is given and for that reason Appellant objected to a definition in the charge. In other words, the partial language or partial wording used in the definition of constructive transfer was not objected to; the Appellant wanted the entire definition to be left out. There was not a single objection to any language or word or words used in the definition of "constructive transfer". I think the objection is too general. It refers to an art. 4476–15. It should be noted that the objection directed the busy trial judge to the Penal Code. However, I have been unable to find the referred-to article in the Penal Code. I do, however, find that there is an article 4476–15 under the Civil Statutes under Health or Public Health.

The Act which may be cited as the Texas Controlled Substance Act, is some 42 pages in length in the bound volume of Vernon's black statutes, Volume 12C. In the supplement pocket part, cumulative pocket part 1991, it appears that article 4476–13 to –15 was repealed by the Acts of 1989, the 71st Legislature, Chapter 678, section 13(1), effective September 1, 1989. This objection was made on April 12, 1989. So the statute of approximately 42 pages in length was still in effect at the trial and I think that such a reference to such a long statute is too general, is not helpful to the trial judge, is not specific enough to direct the trial judge to the correct section of the long statute. The objections, indeed, mislead the trial judge to the wrong code.

In my opinion, article 4476–15 does give a meaning or definition to delivery and constructive delivery and therefore Appellant's objection was erroneous and affirmatively wrong and that in actuality there was a delivery or transfer inasmuch as Bobby Joe did not leave with the cocaine in his control or possession. The peace officers possessed the same and the State introduced the cocaine at trial. Jordan, at last, had received a delivery and/or transfer of the cocaine. That is all the correct statute requires.

The key word involved is transfer or deliver or delivery simply means to send or carry to another person or another place. A reading and analysis of the relevant part of the long article 4476–15, commonly

called the Controlled Substances Act (which is not in the Penal Code as contended for by the Appellant) clearly shows that it is not necessary to even have an agency relationship involved. Clearly, the Appellant transferred the dope herein from himself to another or to another place and also Bobby Joe transferred the cocaine. Bobby Joe did not have possession of it after the officers necessarily moved in. The undercover man, for imperative purposes of his own safety, needed and asked for assistance and help. Jordan did not ask for aid and protection at an unreasonable time. The record reflects these undercover men are like sitting ducks; the danger to their very lives is very real and highly hazardous.

There is nothing in the Act that requires the transfer to be made from the first possessor, the Appellant, to any particular person. That is simply not required by the statute. The only further limiting requirement of the statute has to do with an offer to sell a controlled substance. In that case, the proof of an offer to sell must be corroborated by a person other than the offeree or by evidence other than a statement of the offeree. That additional requirement is not controlling of the case at bar.

I have listened to the tape involved. It has been held that when the contraband or in this case, the cocaine, has been thrown down or dropped that a transfer or delivery has taken place. Narcotic cigarettes which had been dropped by the accused have been held admissible. Matchboxes containing heroin which had been thrown to the ground by the accused have been held to be admissible in a narcotic prosecution. Further, where there was a lack of demonstrating that the place where certain police officers were stationed or positioned to conduct surveillance was owned by the accused, then a plastic bag which contained marijuana and which was dropped by the accused after he saw the approach of the officers, was relevant and admissible.

Where, for example, a defendant or accused had thrown marijuana cigarettes from a pick-up truck in which the accused was a passenger, would not vitiate a finding that the cigarettes were illegal and that

the introduction of the marijuana cigarettes into evidence was erroneous. Also, narcotics recovered from where they were thrown down to the ground by the accused were lawfully seized and were admissible. The record, I think, shows there was a transfer from Bobby Joe and under a correct reading of the charge of the court plus the record in the case, there exists sufficient evidence to sustain the conviction. *See Houston v. State*, 663 S.W.2d 455 (Tex. Crim.App.1984); *Carlsen v. State*, 654 S.W.2d 444 (Tex.Crim.App.1983) (Opinion on rehearing); *Freeman v. State*, 654 S.W.2d 450 (Tex.Crim.App.1983) (Opinion on rehearing); *Denby v. State*, 654 S.W.2d 457 (Tex.Crim.App.1983) (Opinion on rehearing).

A careful review of the entire record and a careful review of the pertinent part of the long statute involved and a careful reading of the charge of the court leads this writer, in his opinion, to conclude that the jury's verdict should be sustained and the trial court's judgment and sentence should be affirmed. Furthermore, in my opinion, a jury verdict in Texas, even in a criminal proceeding is cloaked with inviolability. See TEX. CONST. art. I, § 15. The jury verdict is inviolate except in certain very limited and extreme circumstances. There can be no doubt that in some manner a transfer was made from Bobby Joe to Jordan. This dissent should be filed inasmuch as the Court not only reverses the judgment but actually dismisses and acquits this Appellant. Hence, I feel constrained to respectfully dissent.

Additionally, I have carefully listened and relistened to certain evidence and testimony recorded on a tape in evidence. The tape is not perfect. This would be expected because of the unusual circumstances under which the tape was made. Bobby Joe wanted the money counted out. The money was carefully counted out to the amount of $600 in cash. At that point, Bobby Joe said: "all right". It would then seem to me to be entirely reasonable for some or any rational trier of fact to find that a delivery or transfer had been accomplished. The tape referred to was sent to our Clerk of Court by certified mail and I

opened the same. The Court's opinion writer could have previously listened to the same tape and resealed the same. I saw no evidence of such resealing. At least, in my opinion, I think that the tape plus the statement of facts and the entire record demonstrated a delivery or a transfer. Hence, the evidence was sufficient to sustain the conviction. The jury has the prerogative of drawing reasonable inferences from the evidence. This Appellant is not entitled to an acquittal. *Houston v. State, supra; Carlsen v. State, supra; Freeman v. State, supra; Denby v. State, supra.*

As I understand and analyze the record, the State's attorney requested the playing of the audiotape to the jury. There was no objection from the defense. Additionally, the State passed out transcriptions of the audiotape to the members of the jury so that they, and each of them, could better understand this audiotape. At this point the court specifically asked if there was any objection from the defense. The answer by Mr. Scheve: "No, sir." As I comprehend the record, these transcriptions were handed to the jury. They are included in the record. But these transcriptions are not complete—far from it. Certainly, the Appellant has the obligation to demonstrate error. Appellant has not done so under this record. In my opinion, this Court does not have before it a totally complete, accurate record. It is correct that certain parts of the tape were inquired about from time to time and that from time to time the player playing the tape turned it off intermittently so that certain questions regarding the audiotape could be asked.

It seems that Bobby Joe threw the cocaine on the ground but shortly thereafter Jordan picked it up. There is affirmative evidence in the record that Officer Jordan testified that Bobby Joe did not have the cocaine on him all the time, but that Bobby Joe obtained the cocaine from Appellant. The bantering between Jordan and Bobby Joe lasted well over an hour. The bantering between Bobby Joe and Appellant lasted for some considerable time. The governing statute does not require a peaceful or undramatic type of delivery or transfer.

The charge of the court instructed that a constructive transfer of a controlled substance means a transfer *by some other persons or by some other manner* and the controlled substance may either belong to the person charged *or be under either his direct or indirect control.*

I would hold that there was, at a minimum, direct and circumstantial evidence of a transfer in accordance with the statute, the evidence and the charge of the court. Thus, the judgment and sentence below should be affirmed. Logically, I think, that the direct and circumstantial evidence buttressed by their reasonable and necessary inferences looked upon favorably by a reviewing Court (as we should do) definitely sustained the jury's verdict. Contained in the last two or three transcribed pages of the original State's Exhibit No. 1, which is the admitted and unobjected to tape, I find important and crucial evidence. It had become obvious from the whole record that Jordan, the undercover detective, needed aid and assistance and was concerned for his own life and safety. Jordan's actions were reasonable and should not enure to the benefit of Appellant as a defense. The reason is obvious. Bobby Joe insisted that the money be counted showing a total of $600 in cash. This was done. Bobby Joe agreed that this was an accurate count of $600 after which Jordan also agreed that $600 had been counted out, and Bobby Joe immediately said "all right". Almost immediately prior to this statement of "all right" Bobby Joe had definitely indicated that he would deliver or transfer the cocaine when the $600 was counted out and put in Bobby Joe's hand. I think that these statements taken together with their very reasonable and logically deducible inferences raised the issue that a delivery and transfer was made. That is the ultimate, accepted, standard test. Since the Court orders an acquittal, I must respectfully dissent.

This writer thinks it is of paramount importance to stress that this appeal involves solely Roy George Thomas. Our

Ninth Court is not dealing with an appeal by Bobby Joe Franklin.