Sherrand Owens WILLIAMS, Appellant,

v.

The STATE of Texas, Appellee.

No. 04–96–00926–CR.

Court of Appeals of Texas, San Antonio.

May 20, 1998.

---

1. This form was created by the Department, which designates it "DIC–24."

Lisa M. Beck, Beck & Beck, San Antonio, for appellant.

Edward F. Shaughnessy, III, Asst. Criminal Dist. Atty., San Antonio, for appellee.

Before STONE, DUNCAN and PRESTON H. DIAL,[1] JJ.

## OPINION

PRESTON H. DIAL, Justice (Assigned).

Appellant, Sherrand Owens Williams ("Williams"), appeals his conviction for capital murder. The jury found that Williams conspired with others to rob a pawn shop and that a victim was shot and killed in furtherance of that conspiracy. In nine points of error, Williams contends: (1) the trial court erred by admitting a witness's pretrial identification; (2) the trial court erred by failing to designate two witnesses as accomplices as a matter of law; (3) the evidence is insufficient to corroborate the accomplice witnesses' testimony; (4) the evidence is factually insufficient to show that Williams should have anticipated the murder as a result of the robbery in view of his age; (5) the trial court erred in admitting repeated references to Williams's gang affiliation; (6) the trial court erred in admitting evidence of unrelated crimes committed by third parties with guns stolen in the course of the robbery; (7) the trial court abused its discretion in trying Williams with a co-defendant; and (8) the racial imbalance of the jury denied appellant the right to a trial by his peers. We overrule each of Williams's contentions and affirm the trial court's judgment. We detail the facts only as they become relevant in addressing Williams's points of error.

### IDENTIFICATION

■ In his first point of error, Williams asserts that the trial court erred in admitting a witness's out-of-court identification of him in a photographic line-up. Williams contends the out-of-court identification evidence was inadmissible due to its lack of trustworthiness based on the witness's inability to identify Williams at trial. Williams also contends the photographic line-up was unduly suggestive. The State contends that Williams waived these assertions by failing to raise an objection as to hearsay and suggestiveness at trial.

At trial, the State sought to introduce the identification of Williams by a store clerk. The police asked the clerk for an identification after a receipt for gloves and bandanas was discovered in the car that was used during the commission of the robbery. The individuals who committed the robbery were wearing bandanas around their faces and gloves.

When the State began to question the clerk regarding the photographic line-up, defense counsel objected and requested a hearing on his motion to suppress. When questioned by the court, defense counsel affirmed that he was requesting a *Martinez*[2] hearing to elicit whether anything suggestive was done.

At the *Martinez* hearing, the clerk testified that the officer did nothing to suggest which picture she should pick out; however, the clerk stated that the officer told her she would go to jail if she did not pick someone out. The officer also testified at the hearing and denied telling the clerk that he would put her in jail. The focus of the hearing was whether the clerk was coerced to make the identification by the officer's threat to put her in jail. The trial court ruled that the evidence was admissible.

The objection as to the admission of the identification based on the alleged coercion was reurged at the time the photographs were offered for admission at trial. No objection was made based on hearsay or the suggestive nature of the photographs themselves, which are the contentions that Williams seeks to raise in his brief. Because Williams's objections at trial do not comport

---

1. Assigned to this case by the Chief Justice of the Texas Supreme Court.

2. *Martinez v. State,* 437 S.W.2d 842 (Tex.Crim.App.1969)(holding that a hearing should be held outside the jury's presence when identification is questioned based on a prior police station or lineup identification).

with the challenges he raises in his brief, he has failed to preserve this point of error for our review. *Penry v. State*, 903 S.W.2d 715, 729 (Tex.Crim.App.1995), *cert. denied*, 516 U.S. 977, 116 S.Ct. 480, 133 L.Ed.2d 408 (1996).

Williams's first point of error is overruled.

### ACCOMPLICE AS A MATTER OF LAW

In his second and third points of error, Williams contends the trial court erred in failing to designate Haywood Grant and Robert Lake as accomplices as a matter of law in its jury charge. Since Williams requested and received an accomplice as a matter of fact instruction as to each of these witnesses, Williams must show that the trial court erred in failing to submit an accomplice as a matter of law instruction and that such error, if any, resulted in egregious harm to Williams. *See Posey v. State*, 966 S.W.2d 57 (Tex.Crim.App. 1998); *Almanza v. State*, 686 S.W.2d 157 (Tex.Crim.App.1984).

■ In determining whether the trial court erred in its charge, we must first determine whether Haywood Grant and Robert Lake were accomplices as a matter of law. An accomplice witness is someone who participates with the accused before, during or after the commission of the crime for which the accused is standing trial. *Ex parte Zepeda*, 819 S.W.2d 874 (Tex.Crim.App.1991); *Husting v. State*, 790 S.W.2d 121, 124 (Tex. App.—San Antonio 1990, no pet.). If the witness cannot be prosecuted for the offense with which the accused is charged, the witness is not an accomplice as a matter of law. *Kunkle v. State*, 771 S.W.2d 435, 439 (Tex. Crim.App.1986), *cert. denied*, 492 U.S. 925, 109 S.Ct. 3259, 106 L.Ed.2d 604 (1989); *Husting v. State*, 790 S.W.2d at 124. The mere presence of the witness at the scene of the crime is insufficient to make the witness an accomplice witness. *Kunkle v. State*, 771 S.W.2d at 439; *Husting v. State*, 790 S.W.2d at 124. Furthermore, a witness's failure to disclose or report an offense, or even active concealment of the offense by the witness, will not make the witness an accomplice witness. *Kunkle v. State*, 771 S.W.2d at 439; *Husting v. State*, 790 S.W.2d at 124. Finally, complicity of the witness with the accused in other crimes will not make the witness an accomplice of the accused with respect to the offense for which the accused is being tried if there is no showing that the witness participated in the offense at issue. *Kunkle v. State*, 771 S.W.2d at 439; *Husting v. State*, 790 S.W.2d at 124.

### 1. Robert Lake

■ At trial, Robert Lake testified that he was present with a group of people near East Terrace when somebody made a joke about a pawn shop robbery. No specific pawn shop was mentioned, and Lake testified that he never heard about the actual pawn shop robbery and murder. Lake further stated that he was never present at Lisa McHenry's house and did not receive any of the guns stolen from the pawn shop. Lake testified that he was arrested for outstanding tickets while riding in a cadillac with Williams and others. Lake's testimony was consistent with the testimony of both Lisa McHenry and DeAnthony Walker, neither of whom identified Lake as one of the people present when the details of the pawn shop robbery were discussed.

Williams seeks to rely on the testimony of Haywood Grant to prove Lake was an accomplice as a matter of law. Williams contends that Grant's testimony shows that Lake was involved early in planning the robbery. Grant initially testified that somebody suggested to a group of people that they rob a pawn shop because they needed some guns. With regard to Lake, Grant stated that he was "probably" present. Grant also testified that after the robbery, Williams called him and said that they did it and that "Capone [Gabriel Gonzalez]" shot someone. Grant stated that Williams arrived several hours later in a taxi to pick him up. At trial, Grant testified that Williams arrived alone; however, in his statement to police, Grant stated that Lake arrived in the taxi with Williams. Grant testified that the group then went to Lisa McHenry's house where he saw about six or seven guns. Grant also testified that he saw money, which Williams and Shawnte Simmons used to buy a Cadillac.

Lake's presence in a large group of people when an isolated joke was made by an un-

identified individual and his "probable" presence during further discussion regarding the robbery is not sufficient evidence of involvement to show that he was an accomplice as a matter of law. Furthermore, Grant's inconsistent testimony regarding whether Lake was present with Williams when he arrived in a taxi to pick up Grant several hours after the robbery is also not sufficient evidence to show that Lake was an accomplice as a matter of law. Finally, Lake was not shown to be an accomplice as a matter of law by his presence in a Cadillac allegedly purchased with money stolen during the robbery. Therefore, the absence of the accomplice as a matter of law instruction in the trial court's charge with regard to Robert Lake was not error.

### 2. Haywood Grant

■ Grant testified that he was present at Lisa McHenry's house when a group of individuals were discussing a pawn shop robbery to obtain guns, including who would grab guns and who would drive. Grant stated that he did not take the discussion seriously. When Grant was asked whether he would go along with the plan, he responded that he did not care. Grant testified that he first learned of the robbery when he received a call from Williams. Williams later arrived in a taxi and took Grant back to Lisa McHenry's house, where Grant saw six to seven guns. Grant also saw money, which Williams and Shawnte Simmons used to buy a Cadillac.

Grant's testimony is not sufficient to implicate him as an accomplice as a matter of law. While Grant was present during a discussion regarding the robbery, his statement that he did not care in response to whether he wanted to be involved and his presence with the offenders subsequent to the offense is not sufficient proof that he was encouraging the others to engage in the robbery. Although it is sufficient to pose the question of his involvement to the jury as a matter of fact, it does not rise to the level sufficient to entitle Williams to an instruction that Grant was an accomplice as a matter of law.

Williams's second and third points of error are overruled.

### CORROBORATION

■ In his fourth point of error, Williams asserts that the evidence was insufficient to corroborate the testimony of DeAnthony Walker and Lisa McHenry, who testified as accomplice witnesses.

■ The jury was properly charged that it could not convict Williams on the testimony of Walker and McHenry unless their testimony was corroborated by other evidence tending to connect Williams with the offense committed. *See* TEX.CODE CRIM. PROC. ANN. art. 38.14 (Vernon 1979). To test the sufficiency of corroborating evidence, we eliminate from consideration the accomplice testimony and examine the other evidence to determine if it tends to connect the defendant with the commission of the crime. *Edwards v. State*, 427 S.W.2d 629, 632 (Tex. Crim.App.1968). Corroborative evidence need not establish the defendant's guilt of the charged offense nor directly link the accused to the offense, but is sufficient if it "tends" to connect the defendant to the offense. *Cox v. State*, 830 S.W.2d 609, 611 (Tex.Crim.App.1992). The corroborative evidence may be circumstantial or direct. *Gosch v. State*, 829 S.W.2d 775, 777 (Tex. Crim.App.1991), *cert. denied*, 509 U.S. 922, 113 S.Ct. 3035, 125 L.Ed.2d 722 (1993).

In this case, non-accomplice testimony revealed that five black men were involved in the robbery and during the course of the robbery the owner of the pawn shop was shot and killed. Williams's fingerprints were found on the car that an eyewitness identified to be the one used by the men during the commission of the robbery. The car also contained a receipt for bandanas and gloves, and the men were identified as wearing handkerchiefs or bandanas over their faces. The clerk who sold the bandanas and gloves identified Williams as one of the men who purchased the items. Haywood Grant testified that Williams called him after the robbery and told him "we did it" and "Capone [Gabriel Gonzalez] shot that bitch." This evidence sufficiently tends to connect Williams with the offense and corroborates the accomplice witnesses' testimony. Williams's fourth point of error is overruled.

## FACTUAL SUFFICIENCY OF EVIDENCE OF ANTICIPATION OF MURDER

In his fifth point of error, Williams contends the evidence is factually insufficient to show that he should have anticipated the murder of the pawn shop owner. Williams challenges the sufficiency of the evidence on two grounds: (1) the murder by Gonzalez was in impulsive act independent of the robbery; and (2) Williams should not be held to an adult standard of care in foreseeing the consequence of his acts because he was 15 at the time of the offense.

In reviewing the factual sufficiency of the evidence to support a criminal conviction, we must view all the evidence without the prism of "in the light most favorable to the prosecution" and set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Clewis v. State*, 922 S.W.2d 126, 129 (Tex.Crim.App.1996). In conducting our review, we must give deference to jury findings. *Cain v. State*, 958 S.W.2d 404, 407 (Tex.Crim.App.1997). We are not free to reweigh the evidence and set aside the verdict merely because we feel that a different result is more reasonable. *Id.* Our evaluation must not substantially intrude upon the jury's role as the sole judge of the weight and credibility of witness testimony. *Santellan v. State*, 939 S.W.2d 155, 164 (Tex. Crim.App.1997). We may find evidence factually insufficient only where necessary to prevent manifest injustice. *Cain v. State*, 958 S.W.2d at 407.

Williams initially contends that the murder of the pawn shop owner was merely an impulsive act by Gonzalez, independent of the robbery. Williams asserts, therefore, that the evidence was factually insufficient to show that the murder was foreseeable.

One of Williams's co-conspirators, DeAnthony Walker, testified that he knew Gonzalez had a gun when they were driving to the pawn shop. He also testified that he heard shots fired when they first went into the pawn shop and a different sounding shot when Gonzalez ran after the pawn shop owner. Another witness, who was a customer at the pawn shop when the robbery occurred, testified that he heard shots fired when the men came through the door and also heard shots fired after one of the men jumped the counter. He stated that the shots were fired by a different man than the man who was pointing a gun at him. The clerk of the pawn shop also recalled seeing at least two guns. Finally, Lisa McHenry testified that she thought everyone but Walker had guns when they left her apartment. Bullets or casings from two different guns were recovered from the scene.

Having reviewed the entire record, we note that the only evidence in our record supports a finding that at least one of the conspirators arrived at the scene armed with a gun. It was within the jury's province to believe McHenry's testimony that everyone but Walker had guns when the men left her apartment. The jury could also infer from the evidence presented that Williams had knowledge that at least one person, Gonzalez, was carrying a gun. Based on the evidence in our record, we conclude that the jury's finding that the murder was reasonably foreseeable was not so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust.

Williams's second contention is that the evidence was factually insufficient to show that he should have anticipated the murder in view of his age at the time of the offense. Williams asserts that he should not be held to the adult reasonable man standard of care in foreseeing the consequences of his actions. This assertion is contrary to the legislation that governs the discretionary transfer of a juvenile to a district court for criminal proceedings. Section 54.02(h) of the Texas Family Code provides that if a juvenile court waives jurisdiction and transfers a person to a district court for criminal proceedings, that person "shall be dealt with as an adult." TEX. FAM.CODE. ANN. § 54.02(h) (Vernon 1996). Williams was certified to stand trial as an adult and is subject to the same standard of foreseeability applicable to adults. Williams's fifth point of error is overruled.

## GANG AFFILIATION

In his sixth point of error, Williams contends the trial court erred in admitting

evidence of his gang affiliation. Although the State initially counters that Williams failed to preserve his complaint, we find that Williams did preserve this contention by the objections made by defense counsel prior to voir dire and prior to trial when the State made its proffer, upon which the trial court based its ruling.

■ Williams asserts the evidence of gang affiliation was extraneous offense evidence that was inadmissible under rules 403 and 404(b). Williams disputes that the evidence was admissible to prove the basis of the conspiracy or as same transaction contextual evidence. The State counters that the evidence was admissible as evidence of motive.

■ " 'Relevant evidence' means evidence having any tendency to make the existence of a fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." TEX.R.CRIM. EVID. 401. The State's theory at trial and the testimony of the witnesses was that Williams and other gang members conspired to rob a pawn shop to obtain weapons to attack or defend against attacks by rival gangs. Therefore, the evidence of Williams's gang affiliation was relevant because it makes the existence of the conspiracy more probable than it would have been without the evidence. Nevertheless, relevant evidence may be excluded under rule 403 if its probative value is outweighed by its prejudicial effect or under rule 404(b) if it is evidence of other crimes, wrongs, or acts that is only admitted to show that a person acted in conformity therewith. TEX. R.CRIM. EVID. 403, 404(b). Gang affiliation is considered to be evidence of an "other crime, wrong or act" subject to exclusion under rule 404(b). *See Pondexter v. State,* 942 S.W.2d 577, 583–84 (Tex.Crim.App.1996), *cert. denied,* —— U.S. ——, 118 S.Ct. 85, 139 L.Ed.2d 42 (1997).

Although rule 404(b) prohibits the admissibility of gang affiliation evidence to show that a person acted in conformity therewith, such evidence is admissible for other purposes, such as proof of motive, intent, or identity.

TEX.R.CRIM. EVID. 404(b). In this case, the motive for the robbery was to obtain guns to arm Williams's gang, and his gang affiliation is proof of this motive. Therefore, the trial court did not err in admitting the evidence under rule 404(b). Furthermore, we do not find the trial court abused its discretion in determining that the probative nature of the evidence outweighed its prejudicial effect. *See Montgomery v. State,* 810 S.W.2d 372, 389–90 (Tex.Crim.App.1990)(discussing discretion of trial court in admitting evidence to which rule 403 objection is raised). Williams's gang affiliation and its underlying motive for the robbery were a substantial part of the State's case. Although the evidence of gang affiliation may have prejudiced Williams to some extent, we do not believe the danger of any unfair prejudice *substantially* outweighed the probative value of the evidence in light of the circumstances of the offense.

Williams's sixth point of error is overruled.

### UNRELATED CRIMES

■ In his eighth[3] point of error, Williams complains that the trial court erred in admitting evidence of unrelated crimes committed by third parties with guns stolen in the course of the robbery. The State initially contends that Williams did not preserve this issue for our review because he failed to assert a proper objection.

■ At trial, the prosecutor informed the trial court that she intended to call Officer Gonzalez as the State's last witness and intended to offer evidence of the recovered weapons through him. Outside the jury's presence, the trial court noted that the object of the conspiracy was to obtain weapons for distribution; therefore, the trial court concluded that evidence of the distribution of the weapons would prove that the conspiracy existed and would be a relevant fact. The trial court further concluded that any extraneous offense by the person from whom the weapon was recovered would have been an offense by that individual and would not be prejudicial to Williams. The trial court ruled that the prosecution could introduce the evi-

---

3. Williams's brief does not contain a seventh point of error.

dence. Defense counsel objected to the trial court's ruling, and the trial court overruled his objection. This objection was sufficient to preserve Williams's complaint regarding the prejudicial nature of the evidence of the offenses charged against the individuals from whom the weapons were recovered. *See* TEX.R.APP. P. 52(b) (Vernon Supp.1997)(objection to admission of evidence outside jury's presence deemed to apply to evidence when admitted before jury).

Williams contends that the State used the evidence of the crimes committed by the third parties to "bludgeon" the defense. Williams asserts the trial court's reasoning that the evidence was not extraneous bad acts as to Williams because he did not commit the acts is contradictory with its reasoning that such evidence was relevant to establish Williams's involvement in a conspiracy. We disagree with Williams's contention.

" 'Relevant evidence' means evidence having any tendency to make the existence of a fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." TEX.R.CRIM. EVID. 401. The State introduced evidence to show that the robbery was undertaken as part of a conspiracy to obtain and distribute guns to gang members. The evidence showing that the weapons were distributed tended to prove that the parties had conspired for this purpose. Furthermore, rule 404(b) only excludes evidence of extraneous offenses to prove the character of the accused and his conformity with such character. Proof of offenses committed by third parties does not tend to prove anything about Williams's character and, accordingly, would not unfairly prejudice Williams. Therefore, the evidence was relevant because it tended to make the existence of the conspiracy more probable, and its relevancy was not substantially outweighed by any danger of unfair prejudice. Williams's eighth point of error is overruled.

### SEVERANCE

In his ninth point of error, Williams asserts the trial court erred in trying him with his codefendant, Markett Warfield. Although Williams filed a pretrial mo-

tion to sever, our record does not indicate that Williams requested or obtained a ruling on that motion. A party fails to preserve error if the party fails to first allow the trial court an opportunity to make a ruling. *Crum v. State*, 946 S.W.2d 349, 363 (Tex. App.—Houston [14th Dist.] 1997, pet. ref'd)(holding failure to preserve error with regard to motion for severance where record contained no ruling). Williams failed to preserve error with regard to this point; therefore, it is overruled.

### RACIAL IMBALANCE

In his tenth point of error, Williams contends that he was denied a fair trial because he was not afforded a trial by a jury of his peers. Williams asserts that he is an African–American male who was indicted for having murdered a white female, but there were no African–Americans on the jury. Williams concedes that the case law and code require evidence that the State took action to systemically exclude a racial group in the jury selection process. Williams argues, however, that no State action was required in this case due to the demographics in San Antonio. We agree with the State that this point is not preserved for our review because it was not raised in the trial court. Williams's tenth point of error is overruled.

### CONCLUSION

The judgment of the trial court is affirmed.