11th
Court of Appeals

                                                                  Eastland,
Texas

                                                                        Opinion

 

David McLain
Bailey

Appellant

Vs.      
            No. 11-00-00356-CR  -- 
Appeal from Dallas County

State of Texas

Appellee

 

The jury
convicted David McLain Bailey of the offense of attempted capital murder and
assessed his punishment at confinement for 35 years.  We affirm.  

                                                                   Points
of Error

In his
first point of error, appellant contends that the evidence is legally and
factually insufficient to show that he had the specific intent to commit
capital murder.  In this point,
appellant also argues that the non-accomplice testimony is insufficient to link
him to the crime.  In the second point
of error, appellant complains of errors in the jury charge.  In his final point, appellant argues that
the trial court erroneously allowed inadmissible testimony into evidence.  

                                               Evidentiary
Sufficiency and Corroboration








To
determine if the evidence is legally sufficient, we must review all of the
evidence in the light most favorable to the verdict and determine whether any
rational trier of fact could have found the essential elements of the crime
beyond a reasonable doubt.  Jackson v.
Virginia, 443 U.S. 307 (1979); Jackson v. State, 17 S.W.3d 664
(Tex.Cr.App.2000).  To determine if the
evidence is factually sufficient, we must review all of the evidence in a
neutral light and determine whether the evidence in support of a vital fact is
so weak as to be clearly wrong and manifestly unjust or whether the finding of
a vital fact is so contrary to the great weight and preponderance of the
evidence as to be clearly wrong and manifestly unjust.  Goodman v. State, ___ S.W.3d ___, No.
0120-00, 2001 WL 1472597 (Tex.Cr.App., November 21, 2001); Johnson v. State, 23
S.W.3d 1, 11 (Tex.Cr.App.2000); Cain v. State, 958 S.W.2d 404
(Tex.Cr.App.1997); Clewis v. State, 922 S.W.2d 126 (Tex.Cr.App.1996).  In order to support a conviction based upon
the testimony of an accomplice, there must be corroborating evidence that tends
to connect the accused with the offense. 
TEX. CODE CRIM. PRO. ANN. art. 38.14 (Vernon 1979); Reed v. State, 744
S.W.2d 112 (Tex.Cr.App.1988).  To
determine the sufficiency of the corroboration, we must examine the testimony
of the non‑accomplice witnesses and determine if there is inculpatory
evidence "tending to connect" appellant to the crime.  Reed v. State, supra at 127.  An accomplice witness need not be
corroborated in all her testimony, and the corroboration need not directly link
the accused to the crime or be sufficient in itself to establish guilt.  Reed v. State, supra.  

First, we
note that appellant was found guilty as a party to the offense.  A person is guilty as a party if the offense
is committed by his own conduct and/or by the conduct of another for which he
is criminally responsible.  TEX. PENAL
CODE ANN. ' 7.01 (Vernon 1994).  A person is criminally responsible for an
offense committed by the conduct of another if, acting with intent to promote
or assist the commission of the offense, he solicits, encourages, directs,
aids, or attempts to aid the other person in the commission of the offense.  TEX. PENAL CODE ANN. ' 7.02(a)(2) (Vernon 1994).  If, during an attempt to carry out the
planned conspiracy to commit one felony, another felony is committed:  

[A]ll
conspirators are guilty of the felony actually committed, though having no
intent to commit it, if the offense was committed in furtherance of the
unlawful purpose and was one that should have been anticipated as a result of
the carrying out of the conspiracy. 

TEX. PENAL CODE ANN. ' 7.02(b) (Vernon 1994).  Therefore, appellant himself need not have
had the intent to kill the complainant. 
See, e.g., Fuller v. State, 827 S.W.2d 919, 932‑33
(Tex.Cr.App.1992), cert. den=d, 509 U.S. 922 (1993); Green v. State, 682 S.W.2d 271, 285‑86
(Tex.Cr.App.1984), cert. den=d, 470 U.S. 1034 (1985); Ruiz v. State, 579 S.W.2d 206, 209
(Tex.Cr.App.1979); Wood v. State, 4 S.W.3d 85 (Tex.App. - Fort Worth 1999, pet=n ref=d); Williams v. State, 974 S.W.2d 324, 330 (Tex.App. ‑ San
Antonio 1998, pet=n
ref'd), cert. den=d, 528 U.S. 908
(1999); Naranjo v. State, 745 S.W.2d 430, 433‑34 (Tex.App. ‑
Houston [14th Dist.] 1988, no pet=n); Flores v. State, 681 S.W.2d 94, 96 (Tex.App. ‑ Houston [14th
Dist.] 1984), aff'd, 690 S.W.2d 281 (Tex.Cr.App.1985).  













The
accomplice witness, Jennifer Renee Shurden, testified that she had entered an
open plea of guilty to the offense of conspiracy to commit aggravated robbery
in connection with the offense for which appellant was on trial.  Shurden testified that she had recently met
appellant and the complainant and that she became involved in a plan to rob the
complainant.  Shurden met appellant at
Brandi Bobbitt=s apartment. 
This apartment was used as a hangout for a number of people to use and
to sell drugs.  The night before the
offense, several people who were involved in this offense were at Bobbitt=s apartment, including Shurden, appellant,
the complainant, Bobbitt, Robert Adams, and Brenton Thomas Massey.  The complainant, Monte Sherrod, who was
known as Sonny, was known to carry large sums of cash.  Shurden testified that Sonny had offered her
$700 to leave Bobbitt=s
apartment with him but that she declined. 
Shurden testified that Adams and Massey, appellant=s friends, were upset with Sonny because they
thought he was involved in a drug deal in which they lost $3,500.  The next day, appellant returned to Bobbitt=s apartment with a backpack containing
handguns and called Adams and Massey, who also came over.  After having a conversation in the bathroom,
appellant, Adams, and Massey came out wearing rubber gloves and instructed
Bobbitt and Shurden to clean the apartment of anything that could get them in
trouble.  Before leaving, each decided
which gun they wanted to take with them. 
Appellant subsequently returned to Bobbitt=s apartment and offered to take Shurden home.  Shurden left with appellant. 
Rather than taking her home, appellant took her to his apartment where
they met Norman Chandler.  Appellant
said that Chandler was going to have a talk with Sonny later about the money
situation.  Appellant had a gun, and he
gave Chandler two guns.  Later, they all
went to another apartment where appellant and Chandler were still discussing
taking Sonny=s money. 
Shurden testified that she wanted to leave and that she called Sonny to
come get her.  Appellant and Chandler
started saying that Athis
was really going to happen.@  The plan was for Shurden to
lure Sonny to the apartment and for her to go outside and get Sonny to stop so
that they could Ado what they were going to do.@ 
Appellant stated that he could not go outside because Sonny would
recognize him.  Shurden testified that
Chandler was the gopher and that appellant was the motivating force behind the
robbery.  According to Shurden,
appellant told Chandler to go show Sonny the guns and get his money, basically
to rob him at gunpoint.  When Sonny
arrived, Shurden and Chandler met him in the parking lot.  Shurden tried to jump in the car and tell
Sonny to take off, but Chandler shut the car door and told Shurden that he and
Sonny needed to talk.  After she went
back into the apartment, Shurden heard three or four gunshots and went into
shock.  Appellant, who was also shocked
by the shooting, grabbed Shurden and left. 
Chandler came running up to appellant=s car and wanted in.  Appellant
hesitated but let him in.  Chandler,
while smiling, said: AI shot
him right between the eyes.@  Appellant asked Chandler why
he shot him, and Chandler replied: A[B]ecause he was trying to get away.@  As they attempted to drive
away, they were stopped by a police officer who questioned and released them
when he failed to find any weapons.  

The jury
was instructed that Shurden was an accomplice witness and that her testimony
must be corroborated by other evidence tending to link appellant to the
crime.  Other witnesses, including
appellant himself, corroborated various parts of Shurden=s testimony. 
Appellant testified that he knew about Chandler=s and Shurden=s plan to rob Sonny, that he drove them to the location where the
offense occurred, and that he drove them away from the scene.  Appellant also testified that he had
informed them that he wanted nothing to do with their plan.  

Bobbitt
testified that Adams, Massey, and appellant were good friends and that Adams
and Massey were Aagitated@ with Sonny over the drug deal in which they were duped out of
$3,500.  She overheard them commenting
about taking Sonny=s
money.  Bobbitt stated that, when
appellant came to her apartment the next morning, he was angry and brought
three or four handguns with him. 
Appellant, Adams, and Massey later congregated in Bobbitt=s bathroom, shut the door, and stayed in
there for about two hours.  When they
came out, they were wearing rubber gloves and wanted everything removed from
the apartment with their name on it. 
Bobbitt did not know what was being discussed in the bathroom.  








David
Johannes Black testified that he was at a friend=s apartment on the night of the shooting when appellant, Chandler, and
Shurden arrived.  Black testified that
Chandler had two pistols in his waistband and that Chandler and appellant were
discussing getting money from someone when that person arrived at the
apartments.  Black testified that
Shurden called somebody on the phone who needed to get directions to the
apartment.  While they were in the
apartment, appellant had one of the guns and Chandler had the other.  They were conversing among themselves.  Black was afraid that something bad Awas going to go down.@ 
Black heard appellant telling Chandler that appellant could not go
outside because the guy would not stop if he saw appellant.  Black testified that appellant seemed to be
calling the shots and telling Chandler what to do.  Black also stated that appellant knew the guns were loaded, that
he watched from the parking lot as Chandler went to meet the man in the parking
lot, that appellant and Shurden looked shocked when they heard the shots, and
that appellant gave Black a clip from a pistol to get rid of right after the
shooting.  Black subsequently took
police to the location where he had disposed of the evidence by throwing it
from a bridge.  Police recovered a sock
containing the bullets but did not recover the clip/magazine.  

An
eyewitness who summoned police immediately after the shooting testified that,
just prior to the shots, he had seen a man in the parking lot talking to a man
in a car.  At trial, the witness=s description of the man in the parking lot
matched Chandler.  Officer Mark Kostas
was less than a block away from the scene and responded immediately.  He stopped a car as it was leaving the
apartment complex.  Appellant was
driving the car, and he had one male passenger and one female passenger.  All three were calm and cooperative.  Officer Kostas found no weapons in appellant=s car or on the occupants, so he released
appellant and his passengers.  

Soon after
releasing appellant and his passengers, police recovered two loaded .45 caliber
semiautomatic pistols from the ground on the other side of a concrete wall that
bordered the apartment complex.  The
magazine was missing from one of the pistols. 
One of these pistols was identified as the weapon that fired the two
shell casings found at the scene and also the bullet fragments found in the complainant=s car. 
The record also shows that the complainant was shot while sitting in his
car.  He had an entrance wound in the
side of his head and an exit wound in his forehead.  There was a large amount of blood at the scene.  The first officer to arrive at the scene
where the complainant was located testified that the complainant was bleeding
profusely and that he had bone and brain matter sticking out of his
forehead.  








We hold
that the non-accomplice evidence is sufficient to link appellant to the
crime.  We also hold that the evidence
is legally and factually sufficient to support the jury=s verdict. 
Even though the evidence shows that appellant was shocked when he heard
the gunshots and that he himself had no intent to kill the complainant, the
jury was instructed to find appellant guilty of the offense if it found that
appellant acted as a party to the crime. 
The State introduced evidence showing that appellant planned to rob the
complainant at gunpoint, that he supplied the guns used during the robbery to
shoot the complainant, and that he knew the guns were loaded.  Appellant, therefore, should have
anticipated that the complainant might have been shot and killed.  The evidence reflects that Chandler had the
requisite intent to kill when he shot the complainant Aright between the eyes.@ 
Thus, the evidence is sufficient to support the jury=s verdict finding appellant guilty as a party
to the offense of attempted capital murder. 
The first point of error is overruled. 


                                                                     Jury
Charge

In his
second point, appellant argues that the jury charge erroneously allowed the
jury to convict him without finding that he had the specific intent to kill and
that some of the instructions to the jury were vague and confusing.  We note that appellant did not object to the
jury charge.  Consequently, any error in
the jury charge is reversible only if it was so egregious that appellant was
denied a fair and impartial trial.  TEX.
CODE CRIM. PRO. ANN. art. 36.19 (Vernon 1981); 
Almanza v. State, 686 S.W.2d 157, 171 (Tex.Cr.App.1985).  

The jury
was instructed to find appellant guilty of the offense of attempted capital
murder if it found that appellant, Chandler, and Shurden entered into a
conspiracy to rob the complainant and that, in the course of carrying out the
conspiracy, AChandler intentionally attempt[ed] to cause
the death of [the complainant] by shooting [him] with a firearm, a deadly
weapon.@  The
trial court properly applied the law of parties under Section 7.02(b) by
instructing the jury that it could find appellant guilty if Chandler had the
requisite intent to kill.  See Montoya
v. State, 810 S.W.2d 160, 164-65 (Tex.Cr.App.1989), cert. den=d, 502 U.S. 961 (1991).  

Appellant
also contends that two portions of the jury charge were vague and confusing.  The first reads as follows:  

The following definition of Aintentionally@
applies to the portion of the application paragraph that requires you to
determine whether Athe
defendant did intentionally cause the death of@ the deceased. 
(Emphasis added)  








Although there was no Adeceased@ in this case, it seems evident that this passage referred to the
intent to cause the death of the complainant. 
Furthermore, the definition that immediately followed the quoted passage
properly defined the term Aintentionally.@  Appellant=s other complaint relates to the application paragraph where it stated:
AChandler intentionally attempt to cause the
death,@ rather than Chandler intentionally attempted
or Chandler did intentionally attempt. 
Although both quoted portions of the jury charge contain error, the
errors were not so egregious as to deny appellant a fair and impartial
trial.  The second point of error is
overruled.  

                                                     Admission
of Hearsay Testimony

In his
final point, appellant argues that the trial court erred by allowing the
inadmissible hearsay testimony of Bobbitt and Black to be introduced at
trial.  Appellant contends that the
trial court erroneously found that Bobbitt and Black were coconspirators.  The trial court did not find that Bobbitt
and Black were coconspirators but, rather, admitted the testimony as
non-hearsay under TEX.R.EVID. 801(e)(2). 
The testimony of Bobbitt and Black, to which appellant objected, related
to statements made by appellant and also statements made by appellant=s coconspirators during the course of and in
furtherance of the conspiracy. 
Therefore, the trial court properly admitted the testimony under Rule
801(e)(2).  

Under this
point, appellant also contends that the trial court erred in admitting Bobbitt=s testimony about the drug deal in which
Massey and Adams were cheated out of their money because Massey was available
to testify and did testify at trial. 
Appellant contends that, because Massey had Afirsthand knowledge@ of the Arip-off@/drug deal, Bobbitt should not have been
allowed to testify on that topic.  Under
Rule 801(e)(2), statements made by a defendant or by his coconspirators in
furtherance of the conspiracy are not hearsay. 
The availability of the declarant is immaterial.  Furthermore, the State did not offer the
evidence regarding the drug deal for the truth of the matter asserted (to show
that there actually was a drug deal) but, rather, to show appellant=s motive and state of mind after being told
of the drug deal and of the complainant=s possible involvement. 
Appellant=s third point of error is overruled. 

The
judgment of the trial court is affirmed. 


 

TERRY McCALL 

March 14, 2002                                                                       JUSTICE

Do not publish.  See
TEX.R.APP.P. 47.3(b).

Panel consists of:  Arnot, C.J., and 

Wright, J., and McCall, J.