Becker v. State



COURT OF APPEALS


EIGHTH DISTRICT OF TEXAS


EL PASO, TEXAS





JOSE MANUEL BEJARANO,


 Appellant,


v.


THE STATE OF TEXAS,


 Appellee. 

§


 


§


 


§


 


§


 


§



§

No. 08-06-00183-CR



Appeal from


 112th District Court


of Pecos County, Texas


(TC # P-2629-112-CR)




O P I N I O N



 Jose Manuel Bejarano appeals his conviction of attempted indecency with a child, enhanced
by a prior felony conviction. After finding Appellant guilty, the jury found the enhancement
paragraph true and assessed Appellant's punishment at imprisonment for a term of twenty years. 
Finding no error, we affirm.

FACTUAL SUMMARY


 On October 28, 2005, Jacob Bustamantes was visiting with his children in Imperial, Texas. 
He and his former girlfriend, Aida Rodriguez, were driving around in his car with three-year-old
Aidan and the complainant, eleven-year-old Peter Parker. (1) At around 7:30 p.m., they ran into
Appellant, who is Bustamantes' uncle, and asked him if he wanted to go with them to Grandfalls,
about eleven miles away. Appellant got into the backseat with Peter while Aidan sat in the front seat
with Bustamantes and Rodriguez. They purchased some beer in Grandfalls and headed back to
Imperial. Along the way, Bustamantes noticed that Appellant's behavior was different than usual. 
Appellant was normally talkative and joked around with Bustamantes. On this occasion, however,
Appellant focused all of his attention on Peter and was "touchy-feely" with him, hugging him
frequently. Appellant had never acted this way toward Peter or any of his other nephews. 
Bustamantes began watching Appellant in the rearview mirror and saw him put his hand on Peter's
chest while whispering to him. Peter told Appellant to stop several times and Bustamantes also told
him to leave Peter alone. Appellant told Bustamantes they were just playing around. The behavior
continued so when they reached Imperial, Bustamantes stopped the car and got Peter out of the
backseat. They went into a restroom at the community center and Bustamantes asked Peter
what Appellant was doing. Bustamantes knew that Peter had been sexually abused when he was four
years old but he had never talked to him about the details. Peter said that Appellant was rubbing his
chest and moving his hand lower near his "private." When Appellant tried to touch Peter's
"private," he pushed Appellant's hand away and told him to stop. Appellant also tried to kiss Peter
and whispered that Peter should give him a kiss. When they returned to the car, Bustamantes told
Appellant to get out of the car. As Appellant did so, he told Bustamantes, "Fuck your girlfriend,
fuck your son." Bustamantes punched Appellant in the face and knocked him out. He got in the car
and drove home, leaving Bustamantes where he fell. Bustamantes knew Appellant had been injured
when he fell out of a vehicle and sometimes needed assistance to walk. He talked to his mother
about what had happened and he told her to call the police while he went back to find Appellant. 
Appellant was already gone by the time Bustamantes returned. He returned home and called the
sheriff's office. 

 Deputy Sheriff Ron Tucker spoke with Bustamantes on the telephone and asked him to bring
Peter to meet him and the Justice of the Peace, Arnold Braden, at the J.P.'s office in Imperial. The
four of them met around12:30 a.m. on October 29. Tucker spoke with Peter and Bustamantes and
J.P. Braden issued a warrant for Appellant's arrest. Tucker obtained the address where Appellant
was staying and went to arrest him. Appellant initially would not get out of bed and was unsteady
on his feet. Because Appellant kept trying to walk away from Tucker and get back in bed, Tucker
decided to place Appellant in handcuffs. Tucker knew Appellant from the community and had seen
him walking with a cane earlier that day. Once they were back at the J.P.'s office, Appellant became
belligerent and vulgar when J.P. Braden tried to talk to him. Tucker then placed Appellant in his
patrol car and transported him to the Pecos County Jail in Fort Stockton. During the drive, Appellant
told Tucker he had better watch his back because he ran with the Mexican Mafia. Following
Appellant's arrest, Tucker took a written statement from Bustamantes but Rodriguez said she did
not see what happened and refused to give a statement. Tucker took Peter to Harmony Home, a child
advocacy center in Odessa, to be interviewed.

 Peter testified at trial that he lived with his mother and brother in Monahans. In October
before Halloween, he had gone to visit his father in Imperial. His father picked him up and took him
to his grandmother's house. They went riding around in his father's car with Appellant. Peter sat
in the left rear seat behind his father and Appellant sat in the backseat next to him. Peter fell asleep
in the car and Appellant woke him up by touching him. Appellant was moving his left hand from
one leg to the other, then to his private, and then up to his chest. Appellant was touching Peter over
his clothes rather than under. Peter pushed Appellant's hand away and went back to sleep. When
he woke up again, Appellant was trying to kiss him. Peter then told his father that he needed to go
to the bathroom. They stopped at the park and his father walked with him to the restroom. His
father asked what had happened and Peter told him that Appellant was touching him and had tried
to kiss him. 

 Aida Rodriguez testified for the defense. She recalled that when they picked up Appellant,
he was so drunk that he could not open the car door. After they bought the beer in Grandfalls,
Bustamantes gave beer to her, Appellant, and Peter. She told Bustamantes that Peter should not have
beer but Bustamantes said he would do whatever he wanted with his children. During the drive, she
heard Peter laughing and telling Appellant to stop so she turned around and looked in the backseat. 
She saw Appellant tickling Peter's stomach but she did not see Appellant touch Peter's private. 
Bustamantes told Appellant to stop but he continued to tickle Peter. Rodriguez was in custody at
the time of trial because she had been on federal probation for possession of marihuana and had
violated the terms of probation. But the State showed Rodriguez a copy of the judgment of
conviction revealing that she had not been convicted of marihuana possession but had been
convicted of making a materially false, fictitious, or fraudulent statement. When confronted with
this discrepancy, Rodriguez said she would not snitch out her friends and the federal authorities
would not let her just walk away. 

 Peter's mother, Maria Villa, testified at trial that Peter had been molested when he was four
years old by a sixteen-year-old whose family attended her mother's church. After the incident, she
explained to Peter about good touches and bad touches but they had not had many conversations
about the molestation. Following the incident in October of 2005, she asked Peter whether he
remembered the prior incident and he said he did not. 

 Berta Bustamantes, who is Appellant's sister and Jacob Bustamantes' mother, testified that
she sometimes felt pressure over this case because she felt torn between Appellant and Jacob. She
denied telling Appellant's attorney that Jacob had said he did not really see anything. She admitted,
however, that Jacob had threatened her by saying she would not see her grandchildren again if she
"said anything."

 The jury rejected Appellant's defense and found him guilty of attempted indecency with a
child. At the punishment phase, the State introduced evidence that Appellant had been previously
convicted of aggravated assault with a deadly weapon in 1998, of aggravated robbery in 1987, and
of burglary in 1983. Peter's mother testified that his behavior had changed since the incident and
he had not done well in school to the point that it was necessary for him to repeat the sixth grade. 
 Dr. Daneen Milam, a certified neuropsychologist, examined Appellant and testified on his
behalf. He had suffered a head injury in 1997 when he fell out of a vehicle. As a result of this
accident, he had plates put into his head and began to experience seizures and blackouts. He was
in an auto accident in 2001 which injured his spine and caused him to be in substantial pain. His IQ
is 75 which is probably less than before the accidents. His motor skills are impaired and he cannot
think clearly. Dr. Milam concluded that Appellant is an alcoholic which is problematic because he
is on seizure and pain medications. Doctors also suspect that Appellant has Parkinson's disease
although a definitive diagnosis has not been made. Dr. Milam believed that Appellant had suffered
a seizure as the result of being struck by Jacob Bustamantes and that partially explained his behavior
when he was arrested. She admitted that intoxication could have contributed to his post-arrest
behavior.

 The jury found the enhancement paragraph true and assessed his punishment at imprisonment
for a term of twenty years. On appeal, Appellant raises five issues pertaining to the admission of his
statement to Deputy Tucker regarding the Mexican Mafia, the exclusion of Dr. Milam's expert
testimony at the guilt-innocence phase, and a comment by the bailiff to Peter Parker.

DEPUTY TUCKER'S TESTIMONY


 In Points of Error One and Two, Appellant contends the trial court erred by refusing to
sustain his objections or grant his motion for mistrial pertaining to Deputy Tucker's testimony that
Appellant made a threat following his arrest. He argues that the statement was not disclosed as
required by the trial court's discovery order and should have been excluded. He further asserts that
the statement amounted to an extraneous offense of which he was not given notice as required by
Tex.R.Evid. 404(b). Finally, he maintains that the extraneous offense is not admissible under Rule
404(b) and should have been excluded under Tex.R.Evid. 403 because its prejudicial impact
substantially outweighed any probative value.

 Following Appellant's arrest, Deputy Tucker transported Appellant to the Pecos County Jail
in Fort Stockton. Appellant told Tucker he had better watch his back because he ran with the
Mexican Mafia. Appellant objected to the testimony after it had been elicited on the grounds that
the statement was not included in Deputy Tucker's report, it constituted an extraneous offense, and
it was prejudicial. The court overruled these objections, refused Appellant's request for an
instruction to disregard, and denied his motion for a mistrial.

The Discovery Order


 Appellant did not object at trial that the prosecutor had not complied with the court's
discovery order. Defense counsel's statement that the testimony was not in the deputy's report did
not clearly inform the trial court that the State had violated the discovery order. Thus, the argument
made on appeal is waived. Tex.R.App.P. 33.1. Even if the objection is sufficient to preserve the
complaint, the argument is without merit. The discovery order required the State to produce "[a]ll
statements by the Defendant pursuant to Tex. Code Crim. Proc. Art. 38.22 and all written statements
made by the Defendant in connection with this offense." Article 38.22 applies only to written and
recorded oral statements made by the accused during custodial interrogation. Tex.Code
Crim.Proc.Ann. art. 38.22 (Vernon 2005); Holberg v. State, 38 S.W.3d 137, 141 (Tex.Crim.App.
2000); Dowthitt v. State, 931 S.W.2d 244, 258 (Tex.Crim.App. 1996); Morris v. State, 897 S.W.2d
528, 531 (Tex.App.--El Paso 1995, no pet.). Article 38.22, §5 specifically exempts statements which
do not "stem from custodial interrogation." "Interrogation" refers not only to express questioning,
but also to any words or actions on the part of the police that the police should know are reasonably
likely to elicit an incriminating response from the suspect. See Rhode Island v. Innis, 446 U.S. 291,
300-01, 100 S.Ct. 1682, 1689-90, 64 L.Ed.2d 297 (1980). Although Appellant was in custody, his
statement was not the product of express questioning or its functional equivalent. See id. at 300-01,
100 S.Ct. at 1689-90. Consequently, it does not fall within the ambit of Article 38.22, and it was not
covered by the trial court's discovery order.

Extraneous Offense


 Appellant also complains that the State did not provide him notice of its intent to introduce
this extraneous offense during the guilt-innocence phase of trial. Appellant did not object at trial that
the State had not given him notice of the extraneous offense as required by Rule 404(b). Counsel's
statement that the threat was not in the deputy's report is not sufficiently specific to inform the trial
court that the State had not included the threat in its Rule 404(b) written notice. Therefore, the
argument is waived. Tex.R.App.P. 33.1; Blackmon v. State, 80 S.W.3d 103, 107 (Tex.App.--Texarkana 2002, pet. ref'd)(lack of objection to State's failure to give notice of extraneous offense
waives issue for appellate review). But counsel did preserve Appellant's argument that the threat
is an inadmissible extraneous offense. A trial court's admission of extraneous offenses is reviewed
for an abuse of discretion. Prible v. State, 175 S.W.3d 724, 731 (Tex.Crim.App.), cert. denied, 546
U.S. 962, 126 S.Ct. 481, 163 L.Ed.2d 367 (2005). If the trial judge's ruling is within the zone of
reasonable disagreement, there is no abuse of discretion. Id. We view the evidence in the light most
favorable to the trial judge's ruling. See Corbin v. State, 85 S.W.3d 272, 282 (Tex.Crim.App. 2002).

 Rule 404(b) provides that:

 Evidence of other crimes, wrongs or acts is not admissible to prove the character of
a person in order to show action in conformity therewith. It may, however, be
admissible for other purposes, such as proof of motive, opportunity, intent,
preparation, plan, knowledge, identity, or absence of mistake or accident . . . .


Tex.R.Evid. 404(b). Evidence of extraneous crimes or bad acts that a defendant may have
perpetrated cannot be introduced at the guilt-innocence phase to show the defendant acted in
conformity with his criminal nature and therefore committed the offense for which he is on trial. 
Tex.R.Evid. 404(b); Lockhart v. State, 847 S.W.2d 568, 571 (Tex.Crim.App. 1992). But extraneous
offenses may be admitted for other purposes, such as proving "motive, opportunity, intent,
preparation, plan, knowledge, identity, or absence of mistake or accident." Tex.R.Evid. 404(b);
Lockhart, 847 S.W.2d at 571. The list of other purposes identified in Rule 404(b) is not exclusive. 
Rogers v. State, 853 S.W.2d 29, 33 (Tex.Crim.App. 1993).

 Appellant focuses most of his argument on the portion of the statement in which Appellant
claimed affiliation with the Mexican Mafia and he cites to cases where evidence of gang affiliation
has been permitted under Rule 404(b) to prove motive or intent. See e.g., Medina v. State, 7 S.W.3d
633, 644 (Tex.Crim.App. 1999)(motive and intent); Williams v. State, 974 S.W.2d 324, 331
(Tex.App.--San Antonio 1998, pet. ref'd)(motive). Appellant's claim that he ran with the Mexican
Mafia is part and parcel of his threat against Deputy Tucker. Appellant did not simply state that
Deputy Tucker should watch his back but told him that he should watch his back because Appellant
ran with the Mexican Mafia. Thus, Appellant used the Mexican Mafia reference to give more weight
to his threat. In addressing the admissibility of Appellant's threatening statement, we will address
it as a whole rather than splitting it into two parts.

 Although not expressly identified as one of the other purposes in the rule, evidence of an
extraneous offense may be admissible in order to show consciousness of guilt. See Ransom v. State,
920 S.W.2d 288, 299 (Tex.Crim.App. 1996)(op. on rehearing); Madden v. State, 911 S.W.2d 236,
242 (Tex.App.--Waco 1995, pet. ref'd; Torres v. State, 794 S.W.2d 596, 598-99 (Tex.App.--Austin
1990, no pet.). A 'consciousness of guilt' is perhaps one of the strongest indicators of guilt. Torres
v. State, 794 S.W.2d 596, 598-600 (Tex.App.--Austin 1990, no pet.), It is consequently a well
accepted principle that any conduct on the part of a person accused of a crime subsequent to its
commission, which indicates a 'consciousness of guilt' may be received as a circumstance tending
to prove that he committed the act with which he is charged. Id. Appellant's threat to harm Deputy
Tucker has relevance beyond character conformity because it shows a consciousness of guilt. See
Madden, 911 S.W.2d at 242 (threat to leave the state and kill police officers who tried to stop him
was admissible because it showed consciousness of guilt).

 We next consider whether the threat should be excluded under Rule 403 because its probative
value is substantially outweighed by the danger of unfair prejudice. Evidence showing a
consciousness of guilt possesses substantial probative value. Torres, 794 S.W.2d at 598-600. While
the threat was prejudicial to Appellant's case, the record does not support a conclusion that the
danger of unfair prejudice substantially outweighed the probative value. Appellant argues that there
is a danger that the jury based its decision on gang membership rather than on the facts of the case. 
The State did not introduce any other evidence about Appellant's gang affiliation or the activities
of the Mexican Mafia and it did not mention Appellant's claimed gang affiliation again in the
presence of the jury. Finding no abuse of discretion, we overrule Points of Error One and Two. 

EXCLUSION OF EXPERT TESTIMONY


 In Point of Error Three, Appellant maintains that the trial court erred by refusing to allow Dr.
Daneen Milan to testify as an expert during the guilt-innocence phase of trial. A trial court's
determination of a witness's qualifications as an expert and its decision to allow expert testimony
are reviewed for an abuse of discretion. Weatherred v. State, 15 S.W.3d 540, 542 (Tex.Crim.App.
2000). Rule 702 of the Texas Rules of Evidence provides that "[i]f scientific, technical, or other
specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact
in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may
testify thereto in the form of an opinion or otherwise." Tex.R.Evid. 702. An expert witness must
qualify as an expert in the relevant field by reason of his knowledge, skill, experience, training, or
education. See Tex.R.Evid. 702; Alvarado v. State, 912 S.W.2d 199, 215-16 (Tex.Crim.App. 1995). 
An offering party must establish that an expert holds the requisite knowledge, experience, skill,
training, or education regarding a specific issue, which, in turn, qualifies the expert to give an
opinion on that particular subject. Broders v. Heise, 924 S.W.2d 148, 153 (Tex. 1996). 

 Prior to trial, Appellant's attorney filed an ex parte motion to have an expert in psychiatry
or psychology appointed to assist him in the evaluation, preparation, and presentation of a defense. 
He stated in his motion that Appellant had suffered several head injuries and he required the
assistance of a mental health expert to determine whether Appellant was legally sane at the time of
the offense. Additionally, a mental health expert could evaluate Appellant's injuries and mental
illness and potentially offer evidence in mitigation of punishment. The trial court granted the motion
and at Appellant's request appointed Dr. Daneen Milam. During the guilt-innocence phase of trial
and outside the presence of the jury, Appellant offered Dr. Milam as an expert on the characteristics
of sexual predators and the characteristics of children who have been sexually abused. Dr. Milam
is a board certified neuropsychologist. She is registered with the state of Texas as a treatment
provider for sex offenders. Dr. Milam also has a specialization in substance abuse and other
addictive disorders. She has operated a testing lab in San Antonio since 1982. In this facility, she
performs independent assessments for insurance companies. Additionally, she has contracted with
Child Protective Services for more than fifteen years and has performed approximately one thousand
evaluations for CPS. In these evaluations, she examines parents to assess their capacity to parent
and determine what services they need in order to have their children returned to them. If the parents
are accused of sexual misconduct, they are referred to a program called PACE. At one time, Dr.
Milam had a contract to perform all of the PACE assessments. Dr. Milam assesses sex offenders,
but she does not provide treatment. She estimated she had evaluated approximately two hundred sex
offenders. In her twenty year career as a therapist, she has also assessed children who have been
sexually, physically, and emotionally abused.

 At this point in the witness's testimony, the trial judge asked Appellant's attorney to state the
purpose for which he was calling Dr. Milam to testify at the guilt-innocence phase of trial. Counsel
responded that Dr. Milam would testify as an expert about how children react following outcry. The
trial judge then asked Dr. Milam to explain her experience in that area. Dr. Milam stated her
experience was through assessment, but she added: "Very honestly, Your Honor, I have had a lot
more experience with perpetrators than with the victims." She considered herself a "semi-expert"
in this area because she had tested 45-50 children, compared with approximately two hundred
perpetrators. She evaluated the children to determine what services they needed based on their level
of trauma. She does not evaluate whether or not they are victims or whether or not they are telling
the truth. In her opinion, no neuropsychologist can say whether a child has been sexually abused--they can only determine the child's level or degree of trauma. Determining the characteristics of
sexually abused children is a legitimate area of study within the field of psychology. Despite her
earlier references to herself as a semi-expert in this area, Dr. Milam affirmatively testified that she
is an expert in this area through study and experience.

 Appellant's attorney also offered Dr. Milam as an expert on the effect of alcohol "from the
neuropsychological standpoint" and the characteristics and profile of a sexual predator. With regard
to the latter area, Dr. Milam explained that there was a significant amount of research and literature
on the subject and she received additional in-service training every year through the sex offense
treatment provider board. Most of this research concerns which offenders can be released from
prison and which are a continuing threat to society. In her opinion, whether someone is or is not a
sexual predator is not a psychological construct but is a legal construct--in other words, it is left to
the judge and the jury. However, she was also familiar with numerous studies regarding the
characteristics more likely to be seen in sexual predators than in other people. Making this
evaluation is within the scope of her expertise. 

 The trial court concluded that Dr. Milam was qualified to testify about the mental issues set
forth in Appellant's motion but she was not qualified to testify regarding the believability of the
child. Appellant clarified that he was offering Dr. Milam as an expert on the characteristics of sexual
perpetrators and the characteristics of children who have reported sexual abuse in order to gain
family approval. The trial court excluded her testimony at guilt-innocence but ruled that she would
be permitted to testify during the punishment phase. Dr. Milam testified during the punishment
phase regarding her assessment and evaluation of Appellant. She believed Appellant had suffered
a seizure as the result of having been struck in the head by Jacob Bustamantes, and in her opinion,
this explained Appellant's behavior at the time he was arrested. In addition to testifying about
Appellant's mental and physical limitations resulting from his head injuries and alcoholism, she also
testified that he did not have the characteristics of a sexual pedophile. 

 Appellant first complains that the court abused its discretion by excluding Dr. Milam's
testimony regarding the possible seizure and resulting confusion suffered by Appellant because it
provided an explanation for Appellant's belligerent and threatening behavior at the time of his arrest. 
Additionally, he argues that she could have testified regarding the effect of alcohol and pain killers
on his brain. Appellant did not offer Dr. Milam as an expert on these issues nor did he inform the
trial court that he wished to offer her testimony to explain why Appellant behaved the way he did
at the time of his arrest. Instead, Appellant's focus in the Daubert-Kelly (2) hearing was on qualifying
Dr. Milam to testify as an expert on the characteristics of sexual predators and characteristics of
sexual abuse victims following outcry. 

 Appellant next argues that the trial court erred by finding Dr. Milam was not qualified to
testify regarding why Peter changed his story. According to Appellant, Peter first described the
incident in such a way that it could have been mere tickling but at trial he testified that Appellant had
touched him. He asserts that Dr. Milam should have been permitted to testify at guilt-innocence
about why Peter's story evolved. At the Daubert-Kelly hearing, Appellant offered Dr. Milam as an
expert in evaluating a child sexual abuse victim's level of trauma. She did not testify that she was
an expert in explaining why a child victim's story changes or "evolves."

 Finally, Appellant asserts that Dr. Milam could have educated the jury regarding the
dominating and threatening role that Jacob Bustamantes played in the family. Again, Appellant
offered no testimony at the expert hearing on Dr. Milam's expertise in this area.

 Appellant failed to carry his burden of establishing that Dr. Milam was qualified as an expert
to testify at the guilt-innocence phase of trial on these issues. Consequently, the trial court did not
abuse its discretion by excluding her testimony. Points of Error Three and Four are overruled.

BAILIFF'S COMMENT TO COMPLAINANT


 In his final point of error, Appellant complains that the bailiff made a comment before the
jury which constituted a comment on the weight of the evidence in violation of Article 38.05 of the
Code of Criminal Procedure and violated Appellant's right to an impartial jury. At the conclusion
of Peter Parker's testimony, the trial court instructed the witness that he could step down and told
him, "You can leave. Jerry will take you." The bailiff then told Peter, "Give me five, Buddy." 
Appellant's counsel states that he did not hear the comment and was unaware of it until reading the
reporter's record on appeal. 

 A trial judge is not permitted to comment on the weight of the evidence or convey his opinion
of the case at any stage of the trial. Tex.Code Crim.Proc.Ann. art. 38.05 (Vernon 1979). An
appellant must object during the trial in order to preserve error. Tex.R.App.P. 33.1. Even
constitutional rights can be waived by failing to properly object in a timely manner. Saldano v. State,
70 S.W.3d 873, 889 (Tex.Crim.App. 2002). Generally, an objection must be made in order to
preserve Article 38.05 errors. See Jasper v. State, 61 S.W.3d 413, 420-21 (Tex.Crim.App. 2001). 
In Blue v. State, a plurality of the Court of Criminal Appeals held that a defendant is not required to
object to a comment by the trial judge which taints the defendant's presumption of innocence or
otherwise constitutes fundamental error of constitutional dimension. See Blue v. State, 41 S.W.3d
129, 132 (Tex.Crim.App. 2000)(trial judge's comments informing the venire that defendant was
considering entering into plea agreement and that judge would have preferred that defendant plead
guilty, were fundamental error of constitutional dimension and required no objection to preserve
issue for appeal). A plurality opinion, however, is not binding precedent. See Jasper, 61 S.W.3d
at 421. Even if we were bound to follow Blue, we do not view the bailiff's comment as rising to the
level of the judge's statements in Blue. Further, Appellant does not cite any authority establishing
that such a comment is fundamental error of constitutional dimension and we are aware of none. 
Therefore, we find that Appellant was required to object to the bailiff's comment in order to preserve
error. Because Appellant failed to do so, the error is waived. We overrule Point of Error Five and
affirm the judgment of the trial court.


April 17, 2008 

 ANN CRAWFORD McCLURE, Justice


Before Chew, C.J., McClure, and Carr, JJ.


(Do Not Publish)
1. The complainant is referred to throughout the appellate record by the pseudonym "Peter Parker." 
2. Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993); Kelly v. State,
824 S.W.2d 568 (Tex.Crim.App. 1992).